*JS-44 (Rev. 12-07)

**CIVIL COVER SHEET**

12 CV 411

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a)  PLAINTIFFS**

Norma H. Silverberg

**DEFENDANTS**

Marc Silverberg, et al.

12

411

**(b)**  County of Residence of First Listed Plaintiff  Montgomery
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)**  Attorney's (Firm Name, Address, and Telephone Number)

Richard J. Silverberg, 505 Pine Street, Phila, PA 19106
267-519-0240

Attorneys (If Known)

**II. BASIS OF JURISDICTION**   (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☒ 3  Federal Question (U.S. Government Not a Party)
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 362 Personal Injury - Med. Malpractice | ☐ 650 Airline Regs. | ☐ 830 Patent | ☒ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 365 Personal Injury - Product Liability | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 340 Marine | **PERSONAL PROPERTY** | **LABOR** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

**V. ORIGIN** (Place an "X" in One Box Only)

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district (specify)
- ☐ 6  Multidistrict Litigation
- ☐ 7  Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
18 U.S.C. § 1961(1)

Brief description of cause:
Obstruction and mail/wire fraud connected to civil litigation

**VII. REQUESTED IN COMPLAINT:**

- ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
- DEMAND $ 150,000.00
- CHECK YES only if demanded in complaint:
- JURY DEMAND: ☒ Yes  ☐ No

**VIII. RELATED CASE(S) IF ANY**

(See instructions):

JUDGE _____   DOCKET NUMBER _____

DATE  1-26-12

SIGNATURE OF ATTORNEY OF RECORD  *[signature]*

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

JAN 2 6 2012

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

Norma H. Silverberg     :

      v.     :

Marc Silverberg, et al     :

CIVIL ACTION

**12**     **411**

NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.    ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.    ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)    ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.    (X)

_1-26-12_     Richard J. Silverberg    Plaintiff
**Date**    **Attorney-at-law**    **Attorney for**

(267) 519-0240    (267) 886-8898    rjs@rjsilverberg.com
**Telephone**    **FAX Number**    **E-Mail Address**

(Civ. 660) 10/02

JAN 2 6 2012



FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 1250 Greenwood Ave. Jenkintown, PA 19046         12         411

Address of Defendant: 11295 Mingo Dr. Hernando, MS 38632

Place of Accident, Incident or Transaction: Montgomery County, PA
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))         Yes☐   No☒

Does this case involve multidistrict litigation possibilities?         Yes☐   No☒
*RELATED CASE, IF ANY:*
Case Number: _____   Judge _____   Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
                    Yes☐   No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
                    Yes☐   No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
                    Yes☐   No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
                    Yes☐   No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☒ All other Federal Question Cases
(Please specify) RICO

B. *Diversity Jurisdiction Cases:*
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
(Please specify)

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, Richard J. Silverberg , counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
☒ Relief other than monetary damages is sought.

DATE: 1-26-12      _____      48329
                    Attorney-at-Law          Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

                                              JAN 26 2012

DATE: 1-26-12      _____      48329
                    Attorney-at-Law          Attorney I.D.#

CIV. 609 (6/08)



## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NORMA H. SILVERBERG    :

    Plaintiff     :  CIVIL ACTION

            :
  v.        :

MARC SILVERBERG    :  NO.  **12**  **411**
  - and -       :
JOSEPH P. McDONALD, ESQUIRE :
  - and -       :
DIANE M. ZABOWSKI, ESQUIRE  :
            :
    Defendants   :

## COMPLAINT

1.  Plaintiff, Norma H. Silverberg, is an individual and resides in Jenkintown, Pennsylvania.

2.  Defendant, Marc Silverberg ("Marc"), is an individual and resides in Hernando, Mississippi.

3.  Defendant, Joseph P. McDonald, Esquire, is an individual with a principal place of business in Jamison, Pennsylvania.

4.  Defendant, Diane M. Zabowski, Esquire, is an individual with a principal place of business in Collegeville, Pennsylvania.

5.  Plaintiff is the mother of Marc and is 84-years old. At all times relevant and material hereto, plaintiff was legally competent, self-sufficient, living independently and safely, and properly caring for herself and her day-to-day needs. A part-time companion assists her with shopping and other tasks twice per week, and as needed, family members (other than defendant)



assist with other matters, including finances, paying bills, home repairs, and the internet.

6.       At all times relevant and material hereto, Marc was plaintiff's son and the petitioner in the matters of: a) In re Norma H. Silverberg, Principal Power of Attorney (Petition for Agent's Account), Montgomery County Court of Common Pleas, Orphan's Court Division, No. 2011 - x2313; and b) In re Estate of Norma H. Silverberg, An Alleged Incapacitated Person, Montgomery County Court of Common Pleas, Orphan's Court Division, No. 2011 - x3367.

7.       At all times relevant and material hereto, Joseph P. McDonald, Esquire, represented Marc with respect to the Petition for Agent's Account and the Petition for Guardianship.

8.       At all times relevant and material hereto, Diane M. Zabowski, Esquire, represented plaintiff with respect to the guardianship matter.

9.       On February 29, 2000, plaintiff was involved in a serious car accident resulting in severe orthopaedic injuries as well as a head injury.  Plaintiff was hospitalized for two weeks at the Hospital of the University of Pennsylvania, then four months at MossRehab, and then approximately one year at another rehabilitation facility before being fully discharged to independent living.  Plaintiff has now been living independently in her own apartment for approximately ten years.

10.       At all times relevant and material hereto, Marc had knowledge and information, and was otherwise fully aware, of plaintiff's: a) February 2000 car accident; b) related hospitalization, rehabilitation, and recovery; c) overall good physical and mental health, and competence, since being discharged to independent living; and d) ability to live independently and safely, and that she has been doing so for approximately ten years since the accident.

2

11.     Marc has visited plaintiff on numerous occasions throughout the past ten years, including at her apartment, and personally observed plaintiff's overall good physical and mental health and competence. Prior to September 2011, and the filing of defendant's guardianship petition, Marc did not state to family members, or express the opinion or belief to them, that plaintiff: a) was incapacitated or incompetent such that guardianship was needed or required; b) was unable to live independently and/or safely; and/or c) required nursing or other specialized care, nor did Marc take any steps to obtain such care for plaintiff.

12.     At all times relevant and material hereto, upon information and belief, Zabowski and McDonald have known each other for many years, have worked together on various matters, and have a longstanding interpersonal and/or professional relationship.

13.     To the extent that an agency relationship exists and/or may have existed between any of the defendants, or it is determined that an agency relationship exists/existed, the parties acted outside the scope of the agency and/or the scope of said agency was exceeded.

14.     At all times relevant and material hereto, the individual lawyer-defendants each acted in the course and scope of his/her employment and for the benefit of his/her respective employer. Alternatively, the individual defendants each acted outside the course and scope of his/her employment, and solely for his/her own personal benefit.


**JURISDICTION AND VENUE**

15.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 in that plaintiff has brought the instant civil action pursuant to, *inter alia*, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq. This Court exercises supplemental

3

jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

16.     Venue properly lies in the United States District Court for the Eastern District of Pennsylvania in that the violations of plaintiff's rights occurred within the geographical boundaries of the Eastern District of Pennsylvania.

## FACTUAL ALLEGATIONS

17.     On or about August 20, 2007 and March 10, 2009, Marc sent e-mails to Richard Silverberg ("Richard"), plaintiff's son and Marc's brother, requesting certain information concerning plaintiff's financial affairs. There was no response to the two e-mails, which represented the only requests by Marc to Richard for such information.

18.     On or about May 3, 2011, Joseph P. McDonald, Esquire, Marc's attorney, sent Richard a letter requesting ten years of financial records for plaintiff. According to the letter, the request was based upon Richard's power of attorney for plaintiff and his role in assisting plaintiff with her finances, and stated that a petition to compel an "agent's account" would be filed should Richard fail to comply. *See Letter of May 3, 2011, Exh. "A".*

19.     On or about May 18, 2011, Richard wrote to McDonald explaining that while the power of attorney permitted Richard to act as attorney-in-fact for plaintiff, it did not confer standing upon Marc for purposes of obtaining information concerning plaintiff's finances (or anything else). Richard stated he was willing to confirm the status of plaintiff's finances, as he had done in the past with family members, and supplied a copy of a current Vanguard statement. *See Letter of May 18, 2011, Exh. "B".*

20.     On or about June 19, 2011, McDonald (on behalf of Marc) filed a "Petition for

4

Agent's Account" in the Montgomery County Court of Common Pleas, Orphan's Court Division,

No. 2011 - x2313. Pursuant to 18 Pa.C.S.A. §4904 relating to unsworn falsification to

authorities, the petition contained a verification by Marc. *See Pet. for Agent's Acct., Exh. "C".*

21.     In the petition, Marc alleged there had been irregularities in plaintiff's finances

and/or Richard's conduct, that prior requests for plaintiff's financial information had not been

honored, and sought an Order directing Richard to file an agent's account.

22.     On or about July 14, 2011, the Hon. Stanley R. Ott issued an Order dismissing the

petition, *sua sponte,* as an "inappropriate pleading." *See Order of July 14, 2011, Exh. "D".*

23.     On or about September 22, 2011, having failed to gain the information he was

seeking through his initial petition, McDonald (on behalf of Marc) filed a "Petition Under §§

5511 of the Probate, Estates, and Fiduciaries Code to Adjudge Norma H. Silverberg to be Totally

Incapacitated and Appoint Plenary Permanent Guardianship of Her Estate and Her Person," in

the Montgomery County Court of Common Pleas, Orphan's Court Division, No. 2011 - x3367.

Unlike the petition for agent's account, the guardianship petition did not contain the required

verification from Marc, and instead contained an improper attorney verification signed by

McDonald. *See Pet. for Guardianship, Exh. "E".*

24.     Although the Petition for Guardianship and the prior Petition for Agent's Account

contained substantially similar allegations, the Petition for Agent's Account did not contain any

allegations suggesting that plaintiff was incapacitated or incompetent. To the contrary, the

Petition for Agent's Account stated, "Norma lives in an apartment in Jenkintown and does not

now, nor has she ever, lived in an assisted living facility or nursing home."

25.     In the guardianship petition, Marc made a series of knowingly false and fraudulent

5

allegations for the specific purpose of supporting his claim of incapacity and to gain guardianship, which he knew were false at the time he made them, and which were not contained in the prior petition for an agent's account. In particular, the guardianship petition alleged that plaintiff: a) suffers from mental deficits consistent with dementia; b) lacks the capacity to make or communicate any responsible decisions concerning her person; c) is unable to keep herself properly nourished and hydrated or communicate to others her need for assistance in these areas; and d) suffers from so severe a mental condition that the assistance of other persons or services would not enable her to participate in the making of any decisions concerning her estate or person. *Pet. for Guardianship at 4-5, Exh. "E".*

26.     The petition's proposed Final Decree states, in pertinent part:

> The Court finds that Norma H. Silverberg suffers from dementia, a condition or disability which totally impairs her capacity to receive and evaluate information effectively and to make and communicate decisions concerning management of her financial affairs or to meet essential requirements for her physical health and safety.
>
>                         ...........................
>
> The Guardian of the PERSON shall have authority and responsibility to decide where Norma H. Silverberg shall live and how meals, personal care, transportation and recreation will be provided. The Guardian of the PERSON shall also have the authority to authorize and consent to medical treatment and surgical procedures necessary for the well-being of Norma H. Silverberg. ... The Guardian of the ESTATE shall have the authority and responsibility to manage and use the incapacitated person's property . . . [and] to spend INCOME for the incapacitated person and her legal dependents without the Court's written approval.

*See Exh. "E"* (emphasis in original).

6

27.     In Paragraph No. 26 of the petition, it states that Marc does not have any adverse interest to plaintiff. However, on numerous occasions during the period of plaintiff's alleged incapacity, Marc requested and received from plaintiff funds totaling more than $100,000 for Marc's personal purposes and use.

28.     On or about September 22, 2011, the Montgomery County Court of Common Pleas signed an Order stating, in pertinent part:

> Petitioner shall cause to be served (by personal service) the <u>Citation</u> and <u>Petition</u> with attached <u>Important Notice</u> upon the alleged incapacitated person at least twenty (20) days prior to the Court hearing. *The contents and terms of the Petition and the Important Notice shall be explained to the maximum extent possible in language and terms the alleged incapacitated person is most likely to understand.* An affidavit of service shall be filed before the hearing or offered as an exhibit at the beginning of the Court hearing.

*Prelim. Decree of Sept. 22, 2011, Exh. "F"* (emphasis in original and supplied).

29.     On or about October 1, 2011, without prior notice, Marc, Marc's ex-wife Shelley Radinsky, and McDonald appeared at plaintiff's residence to serve the Petition for Guardianship. They came with food from a local delicatessen and initially engaged plaintiff in light, social conversation. Plaintiff did not know that the petition had been filed, and at no time during the visit was plaintiff informed of the filing or existence of the petition, or the purpose of the visit. Plaintiff was introduced to McDonald, but his role was not properly disclosed to her.

30.     Contrary to, and in violation of, the Order of September 22, 2011, Marc and/or McDonald failed and refused to explain to plaintiff in any respect: a) that the Petition for Guardianship had been filed against plaintiff; and b) the contents and terms of the Petition and Important Notice. Instead, for approximately one hour, they sought to obtain information to

7

support the guardianship petition, including with respect to plaintiff's financial affairs.  Of particular interest to Marc and McDonald was Richard's role with respect to plaintiff's finances.

31.    At the time of the meeting, Marc, Shelley and McDonald knew that plaintiff was 83 years old, was significantly disabled from her 2000 car accident, and would be unsuspecting and cooperative in any such questioning.  This created a highly oppressive environment whereby they were able to take advantage of plaintiff's circumstances, and Marc and Shelley's personal relationship with plaintiff, for the specific purpose of obtaining information to support the illegitimate guardianship petition.

32.    Despite the Order of September 22, 2011, and the legal requirements imposed upon counsel in serving petitions for guardianship based upon alleged incapacity, McDonald merely left a copy of the guardianship petition, Citation, and Important Notice on the dining room table as he exited plaintiff's apartment.  As a result, plaintiff did not understand the true circumstances of the visit and questioning, and was unable to properly protect her interests.

33.    Later that day, after everyone had left, plaintiff looked at the documents that had been left by McDonald and saw for the first time that a Petition for Guardianship based upon alleged incapacity had been filed against her.  Upon reviewing the allegations, plaintiff was deeply hurt, severely emotionally upset, and felt physically sick; plaintiff was also angry and outraged by the knowingly false and fraudulent statements contained in the petition.

34.    On or about October 2, 2011, Richard and Ellen Silverberg-Brennan ("Ellen"), plaintiff's daughter, visited plaintiff at her apartment.  Ellen and Richard (who each received a copy of the petition by mail the previous day) had come to review and discuss the petition with plaintiff, and were unaware that Marc and the others had been there the day before.

8

35.    Plaintiff informed Ellen and Richard what had occurred the previous day, and that she had already reviewed the petition herself.  Plaintiff proceeded to carefully review the allegations with Ellen and Richard, and expressed to them her extreme emotional upset, anger and outrage at the knowingly false allegations stating, "How could he say these things!" and "How could he do this to me!"  Both Ellen and Richard also became extremely upset, both because the allegations were knowingly false and so egregious, and because the petition and allegations had caused plaintiff to suffer such severe emotional distress, upset, anger, and pain.

36.    On or about October 4, 2011, three days after Marc, Shelley and McDonald had visited plaintiff's apartment, Marc sent an e-mail to Ellen stating, in pertinent part:

> In closing I do not want to be the guardian of Mom, I don't think
> she needs one and she's doing fine as is.  All I am asking for is full
> disclosure and transparency of her account.

*E-mail of 10/04/11, Exh. "G".*

37.    The October 4, 2011 e-mail was directly contrary to the allegations contained in the guardianship petition concerning plaintiff's physical/mental health and condition, and admitted that the true reason for the petition was not that Marc genuinely believed that plaintiff was an incapacitated person who required a guardian, but rather to obtain information and documents concerning plaintiff's finances.

38.    On or about October 6, 2011, Richard forwarded a copy of the October 4 e-mail to Joseph P. McDonald, Marc's lawyer in the guardianship matter.  At that point, McDonald knew that his client had admitted to the falsity of the allegations concerning incapacity and guardianship, and that he did not wish to be plaintiff's guardian.

39.    Upon receipt of his client's October 4, 2011 e-mail, the disciplinary rules

mandated that McDonald either instruct his client to withdraw the bad faith petition, or report his client's fraud to the court. The Rules further demanded that McDonald withdraw from representation rather than facilitate a fraud upon the court. Instead, McDonald violated these duties and continued to press his client's admittedly illegitimate claims.

40.     On or about October 17, 2011, a conference was conducted by the Hon. Stanley R. Ott, Montgomery County Court of Common Pleas (the assigned judge in the guardianship matter), with McDonald and Michael J. Engle, Esquire (plaintiff's original counsel in the guardianship matter). Although McDonald was aware of Marc's October 4, 2011 e-mail, he failed and refused to bring the e-mail and/or Marc's admissions to the attention of Judge Ott and other counsel, and instead proceeded as though the e-mail and admissions did not exist.

41.     On or about the evening of October 17, 2011, Ellen called Marc concerning the guardianship petition. In the conversation, Marc again admitted that the true reason for the petition was not that plaintiff was incapacitated, incompetent and/or required a guardian, but to obtain information from Richard concerning plaintiff's finances, stating to Ellen that Richard could "end everything" (i.e., the guardianship proceeding) by simply producing the records that Marc was seeking.

42.     On October 18, 2011, Judge Ott issued an Order and related letter appointing Diane M. Zabowski, Esquire, as new counsel for plaintiff stating "When you have conducted your necessary due diligence, let me know[.]" *See Letter and Order of Oct. 18, 2011, Exh. "H"*.

43.     On or about November 2, 2011, Richard forwarded Marc's October 4, 2011 e-mail to Zabowski. Richard also informed Zabowski of the substance of the October 17, 2011 telephone conversation between Ellen and Marc. *See E-mail of 11/2/11, Exh. "I"*.

44.     On or about November 17, 2011, Richard sent an e-mail to Zabowski stating, in pertinent part:

> I continue to believe that this is a bad faith petition at multiple levels, and further, that every day the petition remains pending subsequent to Marc's e-mail reversing/withdrawing his positions concerning capacity and guardianship, McDonald is engaging in particularly egregious bad faith conduct - pressing a petition he knows to be baseless.

*E-mail of 11/17/11, Exh. "J"*.

45.     Despite the admissions in Marc's October 4, 2011 e-mail and October 17, 2011 telephone conversation with Ellen, Zabowski failed and refused to move for dismissal, or to even bring the admissions to Judge Ott's attention.

46.     On or about November 28, 2011, Zabowski placed a call to Richard as part of her investigation. During the call, Richard explained and/or reiterated that, *inter alia*: a) the guardianship petition had not been filed in good faith; b) Marc did not have any medical evidence of incapacity, nor did he believe that plaintiff was incapacitated; c) Marc had admitted (in the e-mail of October 4, 2011) to the falsity of the allegations concerning incapacity and guardianship, and that he did not want to be plaintiff's guardian; and d) the petition was likely born of the events surrounding the recent death of Marc's (and Richard's) father, including Ellen and Richard's challenge to the executor in that matter, and/or Marc's longstanding dispute and grievance with Richard unrelated to plaintiff's finances.

47.     Zabowski ignored the overwhelming evidence of bad faith conduct, including the petitioner's admissions that plaintiff was not truly incapacitated and did not require a guardian, and instead undertook a detailed inquiry (both with Richard, and generally) into plaintiff's

financial affairs and Richard's role with respect to those affairs.

48.     On January 4, 2012, a status conference in the guardianship matter was held in Judge Ott's chambers.  Present for the conference were Zabowski, McDonald, and Richard.

49.     At the conference, McDonald failed and refused to report his client's fraud to the court or to withdraw from the case, despite the fact that: a) neither he nor his client had any medical evidence supporting their incapacity claim; b) his client had previously admitted that the allegations concerning incapacity and guardianship were knowingly false, and further admitted that he did not wish to be plaintiff's guardian; and c) his client's admission that the guardianship petition had been filed solely to obtain plaintiff's financial records.

50.     At the conference, despite the various pieces of information she had been provided and/or obtained demonstrating that the guardianship petition was predicated on knowingly false and fraudulent allegations and had been filed for an improper purpose, Zabowski failed to argue the petition should be dismissed on bad faith grounds, or dismissed at all.  Instead, Zabowski made a series of knowingly false and fraudulent statements to the Court for the specific purpose of misleading the Court concerning the true facts and circumstances as she knew or should have known them, as part of an intentional effort to bolster her chances to obtain plaintiff's financial information and records, and which had the practical effect of facilitating the bad faith petition.  In particular, but not by way of limitation, Zabowski stated that Richard had: a) received fees of $460,000 in connection with the settlement of plaintiff's 2000 accident case, which represented more than 50% of the fees actually received; b) made gifts/loans to the children totaling $350,000, including substantial gifts/loans to himself, misrepresenting both the amount and maker; and c) completely "ignored" and "blown off" her request for documents and

12

information concerning plaintiff's finances when there had been no showing that Zabowski was entitled to the information, and regardless, the responses were not even due.

51.    Although she possessed no evidence of malfeasance, Zabowski's statements and conduct at the conference were intended to suggest that Richard had breached his fiduciary duty to plaintiff, was uncooperative (and therefore, had something hide), and designed to portray Richard in an extremely unfavorable, false, and negative light.  Further, Zabowski's conduct was directly contrary to plaintiff's wishes, who merely wanted the bad faith petition dismissed.

52.    At the conference, Judge Ott asked both Zabowski and McDonald whether they "believe[d]" that plaintiff was an incapacitated person and each responded that they "[did] not know" whether plaintiff was incapacitated.  This was intentionally non-responsive and misleading.  In fact, based upon information they had obtained, as well as their personal interactions with plaintiff, both Zabowski and McDonald had a belief that plaintiff was not an incapacitated person within the meaning of the Act.

53.    At the time of the conference, McDonald had no medical evidence to support incapacity, had previously filed an unsuccessful petition for agent's account which admitted that plaintiff had never required assisted living or other special living arrangements, personally observed and interacted with plaintiff for approximately one hour during the October 1, 2011 visit, and had received Marc's October 4, 2011 e-mail admitting to the falsity of the allegations concerning incapacity and guardianship.

54.    At the time of the conference, Zabowski knew or should have known of the unsuccessful petition for agent's account and the admissions contained therein, had spoken with Ellen and Richard concerning plaintiff's condition and the motive(s) for the illegitimate petition,

13

and had received Marc's October 4, 2011 e-mail admitting to the falsity of the allegations concerning incapacity and guardianship. In addition, Zabowski's initial (and only) meeting with plaintiff, which occurred on November 4, 2011 at plaintiff's apartment and lasted more than an hour, had taken place. At the conclusion of the meeting, Zabowski made it clear that she did not believe that plaintiff was an incapacitated person, stating to plaintiff that she had "no problem" with plaintiff's capacity.

55.     At the conference, Judge Ott suggested that plaintiff submit to a neuropsychological evaluation, stating that if the petitioner was unable to meet his burden that plaintiff was an incapacitated person, the petition would be dismissed. Since Marc's October 4, 2011 e-mail conceded that plaintiff did not require a guardian, Zabowski should have opposed any evaluation going to the question of plaintiff's capacity. Instead, Zabowski both supported the examination and simultaneously announced that she would proceed with discovery related to plaintiff's finances and Richard's role.

56.     From in or around 2002-September 22, 2011, Marc expressed no concern and took no action with respect to plaintiff's alleged incapacity and/or need for guardianship. It was only when Marc (both individually and/or through his counsel) sought to obtain information and/or documents relating to plaintiff's finances, was dissatisfied with the response, and sought and failed to obtain a court-ordered agent's account, that he filed the illegitimate Petition for Guardianship alleging that plaintiff was incapacitated and required a legal guardian.

14

## COUNT I
### PLAINTIFF v. ALL DEFENDANTS
### RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT
### OBSTRUCTION OF JUSTICE - 18 U.S.C. § 1512(c)

57.     Plaintiff incorporates, by reference thereto, Paragraph Nos. One (1) through Fifty-six (56) as though fully set forth herein.

58.     The conduct of defendants, both individually and collectively, constitutes a violation of plaintiff's rights as secured by the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., and in particular, but not by way of limitation, 18 U.S.C. §§ 1962(c), 1512(c).

59.     The conduct of the corporations, companies, law firms and/or law offices, each acting through their employees, representatives, clients, and/or associates, constitutes conduct of an enterprise through a pattern of racketeering activity.  In particular, but not by way of limitation: a) Zabowski Law LLC and Law Offices of Joseph P. McDonald each constitute an association-in-fact or enterprise within the meaning of RICO engaged in, or the activities of which affect, interstate or foreign commerce; b) in addition, Zabowski Law and McDonald Law formed a joint association-in-fact or enterprise within the meaning of RICO; c) the activities of each enterprise and the joint enterprise were conducted by persons who were either employed by or associated with said enterprise/joint enterprise within the meaning of RICO; d) in addition, Zabowski Law and McDonald Law each conducted their respective enterprises through the other, and therefore, were "persons" within the meaning of RICO for purposes of doing so; and e) said persons conducted or participated, directly or indirectly, in said enterprises'/joint enterprises' affairs through a pattern of racketeering activity.  Each enterprise and the joint enterprise

15

comprise an ongoing organization with a framework for making and carrying out decisions, with members that function as a continuing unit with established duties, and which is distinct, separate and apart from the pattern of racketeering activity in which it engages.

60.     Defendants corruptly obstructed, influenced or impeded an official proceeding, or attempted to do so.  Said conduct was for the purpose of wrongfully impeding the due administration of justice and included, *inter alia*, making numerous knowingly false and fraudulent statements in legal filings and/or directly to the court, and utilizing knowingly illegitimate legal filings in an improper effort to obtain documents and information to which they were not entitled.  In particular, but not by way of limitation: a) the filing and service of the September 22, 2011 Petition for Guardianship (filed and served by Joseph P. McDonald, Esquire on behalf of Marc Silverberg) containing numerous, material, knowingly false and fraudulent statements concerning incapacity and guardianship; b) the failure by McDonald to conduct a proper investigation prior to filing the guardianship petition, and/or disregarding the information showing that plaintiff is not an incapacitated person and does not require a guardian, including his client's own admissions; c) with respect to the Petition for Guardianship, the violation of the Pennsylvania Rules (by Marc and McDonald) requiring that all pleadings contain a verification, pursuant to 18 Pa.C.S.A. §4904 relating to unsworn falsification to authorities; d) the violation of the Order of September 22, 2011 (by Marc and McDonald) and Pennsylvania state law which required that the petitioner explain "to the maximum extent possible" the contents and terms of the Petition and the Important Notice; e) the violation of the letter and Order of October 18, 2011 (by Zabowski) to perform "due diligence" since, *inter alia*, due diligence demanded that Zabowski not undertake an investigation of an admittedly bad faith petition, but rather

16

immediately move for dismissal upon learning that the petitioner admitted to the falsity of the allegations concerning incapacity and guardianship; f) Marc and McDonald's various actions in pressing the guardianship petition after Marc's October 4 and 17, 2011 admissions, including all statements and conduct at the conferences of October 17, 2011 and January 4, 2012; g) at the conference of January 4, 2012, Zabowski's numerous knowingly (and/or recklessly) false and fraudulent statements concerning Richard's actions, including with respect to fees taken in plaintiff's accident case, gifts/loans made to the children, and purported lack of cooperation; h) Zabowski's various actions in pursuing/investigating plaintiff's financial records and affairs and Richard's role, predicated upon the admittedly false and fraudulent Petition for Guardianship; and i) the various violations by McDonald and Zabowski of the Pennsylvania Rules of Professional Conduct, all constitute conduct by defendants that corruptly obstructed, influenced or impeded an official proceeding, or which attempted to do so.

61.    In addition to the allegations hereinbefore set forth, Marc Silverberg knew that plaintiff was not incapacitated and did not require a guardian, yet still filed a petition for guardianship based upon alleged incapacity.  Although Marc had numerous, extended interactions with plaintiff over the ten years that plaintiff has lived in her Jenkintown apartment, he never informed plaintiff, Ellen or Richard that he believed that plaintiff was physically or mentally incapacitated, or otherwise unable to live independently and safely in her apartment, and took no action to obtain nursing care or to place plaintiff in an assisted living or other facility.  It was only when Marc requested that Richard supply him with plaintiff's financial information and records, was dissatisfied with the response, and his petition for an agent's account was denied, that he claimed for the first time that plaintiff suffers from dementia, is

17

"totally impair[ed]," is unable to keep herself properly nourished and hydrated, that a guardian is required, and that he should be appointed plaintiff's guardian.

62.      In a further effort to support the illegitimate guardianship petition, the petition contains allegations concerning plaintiff's finances and Richard's role which were knowingly false, or which were made in reckless disregard for the truth.  These allegations were extrapolated from, and based solely upon, a single Vanguard statement, the closing balance as shown on the statement, and the three transactions shown totaling $6000 which the Petition for Guardianship characterized as "suspicious."  In fact, Marc has no knowledge or information concerning the meaning of the information contained in the statement, and therefore, cannot legitimately claim that the statement demonstrated anything.

63.      Marc has claimed that his interests are not adverse to plaintiff, and also that plaintiff suffers from dementia which "totally impairs her capacity to receive and evaluate information," including with respect to plaintiff's finances.  These contentions are contrary to, and cannot be reconciled with, the fact that Marc requested and received from plaintiff more than $100,000 during the period of plaintiff's alleged incapacity.

64.      On October 4 and 17, 2011, Marc admitted that the allegations contained in the guardianship petition concerning plaintiff's physical and mental health were false and fraudulent, that plaintiff did not require a guardian, that he did not wish to be her guardian, and that the sole purpose in filing the petition was to obtain plaintiff's financial records.  Despite demands that he do so, Marc has failed and refused to withdraw the bad faith petition, stating he will do so only if Richard supplies the documents Marc has demanded.

65.      In addition to the allegations hereinbefore set forth, Joseph P. McDonald, Esquire,

based upon the totality of the circumstances, knew or should have know that the allegations contained in the Petition for Guardianship concerning incapacity and guardianship were knowingly false and fraudulent, that Marc did not have a genuine, good faith belief that plaintiff was an incapacitated person who required a guardian, that the allegations concerning financial irregularities and/or wrongdoing were unsupported and without any reasonable foundation, and that the petition was being used as an improper device to obtain plaintiff's financial records.

66.     McDonald conducted no pre-petition investigation and/or ignored the results of any such investigation.  In particular, but not by way of limitation: a) McDonald was aware of Marc's prior failed attempts to secure the financial records and information, and participated in those efforts; b) although the Petition for Agent's Account contained a proper verification, the Petition for Guardianship contained an improper attorney verification, demonstrating that Marc was unwilling to verify the knowingly false and fraudulent allegations; c) on October 1, 2011, McDonald participated in the improper meeting with plaintiff, which lasted more than an hour, and was able to personally observe that she is not an incapacitated person; and d) on October 4, 2011, Marc sent an e-mail (which was forwarded to McDonald on October 6, 2011) admitting that plaintiff does not require a guardian, that his client does *not* want guardianship, and that all his client *does* want is financial records.  Nevertheless, McDonald has continued to press the knowingly bad faith petition, including at the conferences of October 17, 2011 and January 4, 2012, in an illegitimate effort to obtain plaintiff's financial information and documents.

67.     McDonald made at least two knowingly false and/or misleading statements and/or omissions directly to the trial court for the specific purpose of corruptly obstructing, influencing or impeding an official proceeding, or attempting to do so.  In particular: a) at the October 17,

19

2011 conference, McDonald failed to inform Judge Ott of the October 4, 2011 e-mail admitting to the falsity of the allegations concerning incapacity and guardianship; and b) at the January 4, 2012 conference, Judge Ott asked McDonald whether he "believed" that plaintiff was an incapacitated person and McDonald responded that he did not "know" whether she was incapacitated. McDonald's response was knowingly false and/or misleading since, *inter alia*: a) he was not asked what he *knew*, but what he *believed*; b) his client had previously admitted "I do not want to be the guardian of Mom, I don't think she needs one[;]" and c) McDonald had spent more than an hour with plaintiff at her apartment, and saw for himself that plaintiff is not incapacitated.

68.     McDonald's knowing failure to honor his ethical obligations as a lawyer also corruptly obstructed, influenced or impeded an official proceeding, or was an attempt to do so. Upon learning that the Petition for Guardianship was predicated upon false and fraudulent allegations concerning plaintiff's physical/mental health and the need for guardianship and that Marc did not wish to be plaintiff's guardian, material allegations which go to the very heart of the petition, McDonald was ethically bound to instruct his client to withdraw the bad faith petition and/or report his client's fraud to the court. The Rules further demanded that McDonald withdraw from representation rather than knowingly facilitate a fraud upon the court. However, McDonald failed and refused to carry out his ethical obligations and has continued to press the illegitimate petition, prejudicing the court and all parties, and forcing the unnecessary and substantial expenditure of time, money and resources.

69.     In addition to the conduct and statements hereinbefore set forth, Diane M. Zabowski, Esquire, corruptly obstructed, influenced or impeded an official proceeding, or

20

attempted to do so. Zabowski's actions were intended to facilitate, and in fact facilitated, the prosecution of the bad faith Petition for Guardianship, thus enabling the petition to be utilized in an improper effort to obtain that which petitioner cannot obtain legitimately. In particular, but not by way of limitation, although Zabowski admitted to plaintiff that she did not believe she was an incapacitated person, and although petitioner admitted that the allegations concerning incapacity and guardianship were false and fraudulent, Zabowski failed and refused to move for dismissal or to otherwise advance and protect plaintiff's interests and those of the court. Instead, Zabowski has undertaken a vigorous investigation and sought precisely the same financial data sought by the petition, purportedly based upon "due diligence" when due diligence and the Rules of Professional Responsibility demanded that Zabowski move for immediate dismissal.

70.     At the January 4, 2012 conference, the trial court suggested that plaintiff submit to a neuropsychological evaluation, stating that if the petitioner failed to meet his burden of demonstrating incapacity by "clear and convincing evidence," then the petition would be dismissed. Since Marc had admitted that plaintiff was not incapacitated, did not require a guardian, and was only interested in obtaining her financial records, Zabowski should have opposed any examination. Instead, Zabowski both supported the examination and simultaneously announced that she would proceed with discovery into plaintiff's private financial affairs, and Richard's role with respect to those matters, even though Judge Ott stated that he was inclined to stay the proceedings pending the outcome of the examination.

71.     Zabowski's conduct with respect to the neuropsychological evaluation further demonstrated that Zabowski's primary interest and goal has not been to properly advance and protect plaintiff's interests and to obtain a dismissal, but rather to obtain the same financial

21

information and documents being sought by the petitioner. In fact, a driving force behind Zabowski's refusal to await the outcome of the neuropsychological exam (and insistence on proceeding with discovery) is Zabowski's belief that petitioner will not meet his burden of showing that plaintiff is an incapacitated person, which would result in dismissal of the petition and foreclose Zabowski and McDonald from ever obtaining plaintiff's financial records.

72.    Diane Zabowski made at least one additional knowingly false and/or misleading statement directly to the trial court for the specific purpose of obstructing, influencing or impeding the proceeding, and/or attempting to do so. In particular: a) at the January 4, 2012 conference, Judge Ott asked Zabowski whether she "believed" that plaintiff was an incapacitated person and Zabowski responded that she did not "know" whether she was incapacitated; b) Zabowski was not asked what she *knew* but what she *believed*, and she previously had informed plaintiff at their November 4, 2011 meeting that she had "no problem" with plaintiff's capacity; and c) Zabowski had previously received Marc's e-mail admitting "I don't think she needs [a guardian] and she's doing fine as is." Thus, based upon the totality of the circumstances, Zabowski knowingly failed to communicate her true belief to Judge Ott and instead provided an intentionally false and/or misleading response to the Court. Zabowski also failed to communicate to the court that her belief was irrelevant since, *inter alia*, the petitioner had admitted that plaintiff did not require a guardian, and further, did not wish to be plaintiff's guardian in any event.

73.    In addition to those duties and responsibilities previously set forth, Zabowski's conduct has been contrary to the Pennsylvania Rules of Professional Conduct, and in particular, Zabowski's duties to plaintiff. In particular, but not by way of limitation, Zabowski has failed

and refused to: a) discuss or determine plaintiff's wishes and goals concerning the litigation; b) consult with plaintiff, or to seek and/or obtain plaintiff's permission, concerning the various aspects of the representation; and/or c) keep plaintiff informed concerning actions or developments, therefore foreclosing any meaningful participation by plaintiff in her case. The practical effect of Zabowski's conduct has been to "close out" plaintiff from her own case, to exclude plaintiff from participation and decisions, to ignore plaintiff's wishes and desires that every effort be made to immediately dismiss the petition, to permit Zabowski to make all decisions and to take any and all actions she deems appropriate in the management of the litigation, including to continue the investigation of the patently baseless petition.

74.     Each of the attorney-defendants had a continuing duty to prevent and disclose frauds upon the court. Plaintiff reasonably relied upon the attorney-defendants to carry out their duties pursuant to the Pennsylvania Rules of Professional Conduct, to obey legal standards, statutes, court orders, court rules, rules of evidence, representations to the court as officers of the court, and representations made under oath to the court. However, rather than carry out their legal and ethical duties, each of the attorney-defendants failed and refused to abide by the Rules, to make appropriate disclosures, and withheld material information of a fraud/fraud upon the court from both plaintiff and the court in an effort to gain (and to actually gain) an improper and unfair advantage, and to utilize the legal process and proceedings for an improper, illegitimate, and bad faith purpose.

75.     The pattern of conduct evidences an agreement, or common scheme or plan, by and between defendants to obtain plaintiff's financial information and documents, and to prop up the illegitimate petition until such time as the information is obtained. Defendants ignored the

admitted falsity of the allegations concerning incapacity and guardianship, the lawyers ignored their ethical obligations to their clients and to the court, and all defendants ignored the admitted and overwhelming evidence of a fraud upon the court, all for the common purpose and goal of obtaining plaintiff's financial information and documents.

76.     The repeated fraudulent acts of defendants, individually and/or collectively, as hereinbefore set forth, were not isolated or sporadic events, but rather were all related in that they had the same or similar purposes, participants, victims, results, and/or methods of commission, and/or otherwise were related by distinguishing characteristics.  Additionally, the actions have continued over a substantial period of time and amount to, pose a threat of continuing racketeering activity, and/or are part of defendants' regular way of doing business, all of which have and will continue to have an adverse effect upon interstate commerce.

77.     As a direct and proximate result of defendants' pattern of racketeering activity as described herein, plaintiff has suffered an injury to business or property, and has otherwise been legally injured within the meaning of RICO.  In particular, but not by way of limitation, plaintiff suffered the following damages and losses:  a) severe damage and loss to reputation; b) repeated interference with and/or the threat to interfere with, and to take control over, plaintiff's person, property, finances, accounts, means of support, relationships, and activities; c) attorney's fees and costs as a consequence of defendants' racketeering activities; d) economic and/or out-of-pocket expenses; e) interference with and/or hindrance of the defense against petitioner's various claims, and/or substantial increase in the time, expense, inconvenience, and/or delay in defending against the claims; and f) attorney's fees and costs and/or a substantial increase in attorney's fees and costs, which were required and expended as an intended consequence of a defendants'

24

racketeering activities.

78.     As relief for defendants' violations of plaintiff's rights as secured by RICO, plaintiff demands all legal, equitable, and/or other remedies available pursuant to RICO for all injuries, harms, damages, and losses suffered, including all losses to business and/or property as hereinbefore set forth, for the pattern of racketeering activity.  In particular, but not by way of limitation, plaintiff demands:  a) an award of all economic and/or compensatory damages; b) punitive, liquidated, and/or treble damages pursuant to 18 U.S.C. § 1964(c); c) an injunction against further violations of plaintiff's rights as secured by the Act; and d) all fines, penalties, attorney's fees, interest, costs and all other legal and equitable relief that may be available and which the Court deems just and appropriate.

WHEREFORE, plaintiff, Norma H. Silverberg, hereby demands judgment against defendants, Marc Silverberg, Joseph P. McDonald, Esquire, and Diane M. Zabowski, Esquire, jointly and/or severally, in an amount in excess of $150,000, exclusive of interest and costs.

## COUNT II
## PLAINTIFF v. ALL DEFENDANTS
## RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT
## MAIL/WIRE FRAUD

79.     Plaintiff incorporates, by reference thereto, Paragraph Nos. One (1) through Seventy-eight (78) as though fully set forth herein.

80.     The conduct of defendants, both individually and collectively, constitutes a violation of plaintiff's rights as secured by RICO, 18 U.S.C. §1961(1), and in particular but not by way of limitation, 18 U.S.C. §§ 1341 and 1343 relating to mail and wire fraud.

81.     The pattern of racketeering activity was predicated upon, and carried out by,

25

repeated fraudulent use of the mails and wires (including telephone and electronic communications) in violation of 18 U.S.C. §§ 1341 (mail fraud) and 1343 (wire fraud), including "innocent" mail/wire communications, in that there were numerous communications concerning and/or secondary to the racketeering activity (and fraudulent scheme or plan) occurring over the telephone, electronically, and/or by mail. The mails and wires were used and were necessary to further the scheme to defraud, and were relied upon as part of the scheme. In particular, but not by way of limitation, in addition to the actions and conduct hereinbefore set forth, the following communications were made to the following persons:

      a.      E-mail of August 20, 2007 from M. Silverberg to R. Silverberg requesting financial information.

      b.      E-mail of March 10, 2009 from M. Silverberg to R. Silverberg requesting financial statement.

      c.      Letter of May 3, 2011 from J. McDonald to R. Silverberg requesting ten years of financial records and threatening court action for noncompliance.

          i.      Sent via First Class Mail.

      d.      Letter of May 18, 2011 from R. Silverberg to J. McDonald responding to request for financial records.

          i.      Sent via First Class Mail.

      e.      Upon information and belief, from July 2011-September 2011, numerous e-mails and/or regular mailings to and from J. McDonald and M. Silverberg containing numerous knowingly false and fraudulent statements

26

concerning Norma Silverberg's physical and mental health in anticipation of filing the guardianship petition.

      f.     On or about September 30, 2011, Petition Under §§ 5511 of the Probate, Estates, and Fiduciaries Code to Adjudge Norma H. Silverberg to be Totally Incapacitated and Appoint Plenary Permanent Guardianship of Her Estate and Her Person, mailed from J. McDonald to R. Silverberg, containing numerous false and fraudulent statements concerning Norma Silverberg and demanding relief that the petitioner did not legitimately seek.

           i.     Sent via First Class Mail.

      g.     On or about September 30, 2011, Petition Under §§ 5511 of the Probate, Estates, and Fiduciaries Code to Adjudge Norma H. Silverberg to be Totally Incapacitated and Appoint Plenary Permanent Guardianship of Her Estate and Her Person, mailed from J. McDonald to E. Silverberg-Brennan, containing numerous false and fraudulent statements concerning Norma Silverberg and demanding relief that the petitioner did not legitimately seek.

           i.     Sent via First Class Mail.

      h.     E-mail of October 4, 2011 from M. Silverberg to E. Silverberg-Brennan containing knowingly and/or recklessly false statements concerning plaintiff's finances and suggesting wrongdoing by Richard, admitting that the statements concerning plaintiff's physical/mental condition contained in the guardianship petition were false and fraudulent, and that the petition was filed as a device to obtain plaintiff's financial records.

i.       E-mail of October 4, 2011 from E. Silverberg-Brennan to R. Silverberg forwarding M. Silverberg's e-mail.

j.       Telephone call of October 17, 2011 from E. Silverberg-Brennan to M. Silverberg concerning the Petition for Guardianship, in which Marc again admitted that the only purpose of the petition was to obtain plaintiff's financial records, and stating to Ellen that Richard could "end everything" by simply producing the documents he was seeking.

i.       Telephone call from Feasterville, PA to Hernando, MS.

k.       Letter and Order of October 18, 2011 from J. Ott to D. Zabowski re representation of Norma Silverberg.

i.       Sent via First Class Mail.

l.       Letter of December 13, 2011 from D. Zabowski to R. Silverberg requesting financial information, and threatening that failure to provide the requested information will result in a petition for an accounting, all predicated upon the illegitimate guardianship petition.

i.       Sent via First Class Mail.

m.       Letter of December 21, 2011 from J. Ott to R. Silverberg concerning attendance at January 4, 2012 conference.

i.       Sent via First Class Mail.

n.       E-mail of January 9, 2012 from R. Silverberg to J. Ott re neuropsychological exam for plaintiff.

o.       Telephone call of January 16, 2012 from D. Zabowski to N.

28

Silverberg whereby Zabowski made knowingly false, reckless, and/or misleading statements to plaintiff concerning Richard's conduct, and that she would schedule a neuropsychological examination *if plaintiff agreed*. At that point, Zabowski had already consented to the exam (at the January 4, 2012 conference) without first consulting with plaintiff, and Judge Ott had already ordered it.

        p.      Letter of January 18, 2012 from R. Silverberg to J. Ott re neuropsychological exam for plaintiff.

            i.      Sent via e-mail.

        q.      Letter January 19, 2012 from J. Ott to R. Silverberg re neuropsychological exam for plaintiff.

            i.      Sent via fax.

82.     Certain mailings and wire communications that are related or secondary to the illegitimate Petition for Guardianship are "innocent" within the meaning of RICO and/or the mail/wire fraud statute, are part of the pattern of racketeering activity and fraudulent scheme or plan, and were necessary to further the scheme to defraud.

83.     Defendants, with the intent to defraud, used the mails and wires for purposes of executing a fraudulent scheme or plan to improperly obtain plaintiff's financial information and records. The fraudulent misrepresentations and/or omissions were reasonably calculated to deceive persons of ordinary prudence and comprehension, including plaintiff.

84.     Plaintiff demands the same relief demanded in Count I.

WHEREFORE, plaintiff, Norma H. Silverberg, hereby demands judgment against defendants, Marc Silverberg, Joseph P. McDonald, Esquire, and Diane M. Zabowski, Esquire,

jointly and/or severally, in an amount in excess of $150,000, exclusive of interest and costs.

## COUNT III
## PLAINTIFF v. ALL DEFENDANTS
## RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT
## CONSPIRACY - 18 U.S.C. § 1512(k)

85.     Plaintiff incorporates, by reference thereto, Paragraph Nos. One (1) through Eighty-four (84) as though fully set forth herein.

86.     The conduct of defendants, as hereinbefore set forth, constitutes an unlawful agreement or conspiracy to violate 18 U.S.C. § 1512 in violation of 18 U.S.C. § 1512(k).

87.     Defendants' various actions as described herein were in furtherance of a RICO conspiracy. The actions of defendants evidence an agreement, or common scheme or plan, to improperly obtain plaintiff's financial information and documents, and to prop up the illegitimate petition until such time as the information is obtained. Even though the allegations concerning incapacity and guardianship were admittedly false and fraudulent, and even though McDonald and Zabowski each had duties to their clients and the court, each abandoned those duties and instead engaged in a common scheme or plan to utilize the illegitimate petition to obtain plaintiff's private financial documents and information. For example, but not by way of limitation, at the January 4, 2012 conference, McDonald vigorously argued that Zabowski had the right to obtain plaintiff's financial information and records from Richard, even though McDonald had no right to any information or documents produced by Richard to Zabowski, and therefore, was a disinterested party in the dispute.

88.     Plaintiff demands the same relief demanded in Count I.

WHEREFORE, plaintiff, Norma H. Silverberg, hereby demands judgment against

30

defendants, Marc Silverberg, Joseph P. McDonald, Esquire, and Diane M. Zabowski, Esquire,

jointly and/or severally, in an amount in excess of $150,000, exclusive of interest and costs.

**COUNT IV**
**PLAINTIFF v. ALL DEFENDANTS**
**<u>ABUSE OF PROCESS</u>**

89.    Plaintiff incorporates, by reference thereto, the allegations contained in Paragraph

Nos. One (1) through Eighty-eight (88) as though fully set forth at length herein.

90.    The conduct of defendants, as described herein, constitutes an abuse or perversion

of the legal process.  Defendants used legal process primarily to accomplish a purpose for which

the process was not designed, an unlawful purpose designed to obtain an illegitimate and

unlawful result in the guardianship proceeding, all of which caused great damage, harm, and loss

to plaintiff.

91.    The guardianship petition and proceeding are not being used for their intended

purpose, or for purposes that are the legitimate object of the process (i.e., a genuine belief that

plaintiff is incapacitated and requires a guardian), but rather as a means of harassment and

intimidation, and as a tactical weapon to obtain documents and information which the petitioner

cannot otherwise obtain and to which he is not entitled, all of which is not the proper object of

the process.

92.    The same allegations which support plaintiff's obstruction of justice and

mail/wire fraud claims also support plaintiff's abuse of process claim, and are incorporated

herein by reference.

93.    As a direct and proximate result of defendants' conduct as described herein,

31

plaintiff has been legally injured. In addition to the damages/losses previously identified, and

which are incorporated by reference, plaintiff suffered economic and/or compensatory damages

and losses, which are or may be permanent in nature, and which may or will continue indefinitely

into the future including, *inter alia*: a) damage to and/or loss of reputation; b) invasion of and/or

interference with privacy; c) reasonable expenses, including attorney's fees, incurred in

defending against the guardianship matter, and for delay and inconvenience; and d) other

damages and losses. Furthermore, the acts of defendants, and the consequences of those acts, as

hereinbefore set forth and as may be more fully developed through discovery, have caused and

may or will continue indefinitely into the future to cause plaintiff to suffer severe mental anguish,

humiliation, anger, upset, embarrassment, insult, anxiety, stress, and emotional and/or

psychological distress, all with associated physical symptoms.

94.     As relief for defendants' violations, plaintiff demands an award of all economic

and compensatory damages for all injuries, harms, damages, and losses suffered in connection

with defendants' wrongful conduct and violations as described herein. As further relief for

defendants' violations, plaintiff demands an award of: a) punitive damages for defendants'

conduct in that it was motivated by an evil motive or intent, malice, and/or was in callous or

reckless disregard to the rights of plaintiff and/or others, and/or was intentional and/or reckless,

wanton, extreme and outrageous, and otherwise satisfied the standard of outrageousness

necessary to support an award of punitive damages; and b) all fines, penalties, interest, costs,

attorney's fees, and all other relief which is available and the Court deems just and appropriate.

WHEREFORE, plaintiff, Norma H. Silverberg, hereby demands judgment against

defendants, Marc Silverberg, Joseph P. McDonald, Esquire, and Diane M. Zabowski, Esquire,

32

jointly and/or severally, in an amount in excess of $150,000, exclusive of interest and costs.

**COUNT V**
**PLAINTIFF v. ALL DEFENDANTS**
**INVASION OF PRIVACY**

95.     Plaintiff incorporates, by reference thereto, the allegations contained in Paragraph

Nos. One (1) through Ninety-four (94) as though fully set forth at length herein.

96.     The conduct of defendants, as described herein, constitutes an invasion of privacy,

intrusion upon seclusion.  Defendants' conduct constitutes a tortious invasion of plaintiff's

privacy in that defendants intentionally intruded into plaintiff's private affairs and concerns,

which conduct would be highly offensive to a reasonable person.

97.     The same allegations which support plaintiff's RICO and other tort claims also

support plaintiff's invasion of privacy claim.

98.     Plaintiff seeks the same relief sought in Count IV.

WHEREFORE, plaintiff, Norma H. Silverberg, hereby demands judgment against

defendants, Marc Silverberg, Joseph P. McDonald, Esquire, and Diane M. Zabowski, Esquire,

jointly and/or severally, in an amount in excess of $150,000, exclusive of interest and costs.

**COUNT VI**
**PLAINTIFF V. ALL DEFENDANTS**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

99.     Norma incorporates, by reference thereto, the allegations contained in Paragraph

Nos. One (1) through Ninety-eight (98) as though fully set forth at length herein.

100.    The conduct of defendants as described in the Factual Allegations section and in

33

Paragraph Nos. 59-76, which are incorporated by reference, constitutes conduct that is extreme and outrageous, intentional and/or reckless, and caused plaintiff to suffer severe emotional distress with secondary or attendant physical symptoms and/or injuries including, but not limited to, elevated blood pressure, headaches, depression, severe anxiety with associated physical symptoms, loss of appetite, and sleep disturbance; plaintiff has been physically ill, has required psychological counseling, and has been prescribed an anti-depressant.

101.    Plaintiff seeks the same relief sought in Count IV.

WHEREFORE, plaintiff, Norma H. Silverberg, hereby demands judgment against defendants, Marc Silverberg, Joseph P. McDonald, Esquire, and Diane M. Zabowski, Esquire, jointly and/or severally, in an amount in excess of $150,000, exclusive of interest and costs.


## COUNT VII
## PLAINTIFF v. DIANE M. ZABOWSKI, ESQUIRE
## BREACH OF FIDUCIARY DUTY

102.    Plaintiff incorporates, by reference thereto, Paragraph Nos. One (1) through One hundred one (101) as though fully set forth at length herein.

103.    As counsel for plaintiff in the guardianship matter, Zabowski is in a fiduciary relationship with plaintiff. Rather than advance and protect plaintiff's interests, Zabowski breached her duty to plaintiff, took actions directly contrary to plaintiff's interests, and directly caused plaintiff to suffer severe and/or permanent damage and loss.

104.    The same allegations which support plaintiff's RICO, abuse of process and intentional infliction of emotional distress claims also support plaintiff's breach of fiduciary duty claim.

34

105.   Plaintiff seeks the same relief sought in Count IV.

WHEREFORE, plaintiff, Norma H. Silverberg, hereby demands judgment against defendant, Diane M. Zabowski, Esquire, in an amount in excess of $150,000, exclusive of interest and costs.

## COUNT VIII
## PLAINTIFF v. DIANE M. ZABOWSKI, ESQUIRE
## BREACH OF CONTRACT

106.   Plaintiff incorporates, by reference thereto, Paragraph Nos. One (1) through One hundred five (105) as though fully set forth at length herein.

107.   As counsel for plaintiff in the guardianship matter, Zabowski is in a contractual relationship with plaintiff. Rather than advance and protect plaintiff's interests, Zabowski breached the contract, took actions directly contrary to plaintiff's interests, and directly caused plaintiff to suffer severe and/or permanent damage and loss.

108.   The same allegations which support plaintiff's breach of fiduciary duty claim also support plaintiff's breach of contract claim.

109.   Plaintiff seeks all economic, compensatory, and other remedies available under the contract or agreement between the parties, and which may otherwise be available under Pennsylvania state contract law.

WHEREFORE, plaintiff, Norma H. Silverberg, hereby demands judgment against defendant, Diane M. Zabowski, Esquire, in an amount in excess of $150,000, exclusive of interest and costs.

35

## JURY TRIAL DEMAND

Plaintiff hereby demands a jury trial with respect to all claims which may be tried before a jury.

**RICHARD J. SILVERBERG, ESQUIRE**

BY: s/ Richard J. Silverberg
**RICHARD J. SILVERBERG**
I.D. No. 48329
505 Pine Street
Philadelphia, PA 19106
(267) 519-0240
Attorney for Plaintiff

36

LAW OFFICES

## SMITH, AKER, GROSSMAN & HOLLINGER, LLP

60 EAST PENN STREET
P.O. BOX 150
NORRISTOWN, PA 19404-0150

M. PAUL SMITH (1943-1998)
J. BROOKE AKER
RICHARD L. GROSSMAN
JAMES L. HOLLINGER
FRANCES A. THOMSON
JOSEPH P. McDONALD

AREA CODE 610
275-8200
FAX 275-7720

May 3, 2011

Richard J. Silverberg
505 Pine Street, 2nd Floor
Philadelphia, PA 19106

### Re: Estate of Norma Silverberg, Principal of a Power of Attorney

Dear Mr. Silverberg:

Please be advised that I represent your brother, Marc Silverberg, in connection with this matter. It is my understanding that your mother received a substantial accident settlement 10 years ago and that you have been handling her financial affairs pursuant to a Power of Attorney which was signed soon after her accident.

Mr. Silverberg advised me that despite repeated requests for information concerning your mother's finances, you refuse to provide the requested information. Accordingly, I would ask that you provide copies of the original power of attorney document that was signed by her, past and current financial statements in your possession for any and all assets in which Norma Silverberg has an interest, regardless of the tilting of the assets, including but not limited to, bank accounts and brokerage accounts and her income tax statements for the past 10 years. Also, please advise me of any real estate or businesses in which she has an interest or had an interest in over the past ten years. I am also requesting the documentation of insurance claim settlement records from the insurance companies as to how much the settlement was and what was the amount deposited into your mother's Vanguard account upon opening it.

In the event that you refuse to comply with this reasonable request for information, then Mr. Silverberg plans to petition the Orphans' Court to compel an Agent's Account, which will require you to disclose any and all transactions which occurred during your entire tenure as Agent of the Power of Attorney, including all principal and income receipts, all disbursements for any purpose, and principal and income on hand presently.

Kindly provide the requested information within 2 weeks. Thank you for your attention to this matter.

Very truly yours,

Joseph P. McDonald

cc Marc Silverberg

RICHARD J. SILVERBERG

ATTORNEY AT LAW

505 PINE STREET

SECOND FLOOR

PHILADELPHIA, PA 19106

———— ————

(267) 519 0240

RJS@RJSILVERBERG.COM

May 18, 2011

Joseph P. McDonald, Esquire
Smith, Aker, Grossman & Hollinger LLP
60 East Penn Street, Box 150
Norristown, PA 19404-0150

    RE:   Norma Silverberg

Dear Mr. McDonald:

        This responds to your letter of May 3, 2011. Preliminarily, this is not an estate matter, as the caption of your letter states. As you know, the power of attorney permits me to act as attorney-in-fact for Norma. It does not confer standing upon Marc or Ellen for purposes of obtaining, or petitioning to obtain, information concerning Norma's financial affairs (or anything else).

        The events surrounding our father's recent death have been tragic and painful, and perhaps have contributed to my brother's actions here. However, my role as attorney-in-fact for Norma is not the same as an executor's duties and responsibilities with respect to the administration of an estate, and does not require that I make the disclosures that your letter demands. Nevertheless, without a good faith basis, you apparently are willing to file a petition in an effort to obtain something to which you are not entitled. Further, since any such petition would require me to retain counsel which would be paid for by Norma, your firm would be causing both Marc and our mother to incur needless financial expense.

        As I have done in the past, I am willing to provide certain information that will confirm the status of Norma's account. In fact, I recently provided both Norma and Ellen with the April 2011 statement from Vanguard, which essentially constitutes the entirety of Norma's assets, and which has now been sent to Marc as well. I believe this satisfies Marc's concerns.

        This is an extremely difficult time for our family. Based upon the inappropriate nature of your letter, it is apparent that your primary concern is not my brother's interests, and instead is extracting fees from him. Hopefully, my brother will come to see that, and knows that his family loves him, that no one is trying to harm or exclude him, and that everyone is doing the best they can.

Joseph P. McDonald, Esquire
May 18, 2011
Page 2


        Should there be any need for future communication, please do so by e-mail.


                              Very truly yours,

                              RICHARD J. SILVERBERG

cc:     Norma Silverberg (via e-mail)
        Ellen Silverberg-Brennan (via e-mail)

nhs/mcdonald 051811 re marc

*Cap Copy*

## Court of Common Pleas of Montgomery County Orphans' Court Division
# COVER SHEET

| | |
|---|---|
| 1A. Does this matter already have an Orphans' Court number or Register of Wills number?<br>☑ NO ☐ YES | 1B. Orphans' Court Number/Register of Wills Number<br>If Yes in box 1A, please fill in number as follows: YEARX#### |

**2. NAME OF ESTATE/ENTITY (E.G.: NAME OF DECEDENT FOR DECEDENT'S ESTATE)**
In Re: Norma H. Silverberg, Principal of a Power of Attorney

**3. TYPE OF ESTATE/ENTITY**

☐ DECEDENT'S ESTATE/TESTAMENTARY TRUST ☐ SETTLOR'S TRUST ☐ (ALLEGED) INCAPACITATED PERSON
☐ MINOR/MINOR'S ESTATE ☑ PRINCIPAL (POWER OF ATTORNEY) ☐ NON-PROFIT CORPORATION
☐ ADOPTION ☐ MISCELLANEOUS/MISCELLANEOUS SEALED

**4. NAME OF FILING PARTY (NOT ATTORNEY FOR FILING PARTY)**
Marc Silverberg

2011-X2313.1.1     FilingID:     65228
Entry of Appearance
Receipt = 2011-1420 1478     Fee     $0.00
D. Bruce Hanes, Esq. - MontCo Register of Wills
6/29/2011 11:18:19 AM

**5. FILING PARTY'S RELATIONSHIP TO ESTATE/ENTITY**
Son of the Principal

**6A. NAME OF ATTORNEY FOR FILING PARTY**
Joseph P. McDonald, Esquire

**6B. NAME OF ATTORNEY'S FIRM AND ADDRESS OF ATTORNEY (OR ADDRESS OF FILING PARTY, IF NOT REPRESENTED)**
1720 Kendarbren Drive, Suite 712

Jamison, PA 18929

**6C. PHONE NUMBER**
267-483-5735

**6D. FAX NUMBER**
267-483-5746

**6E. E-MAIL ADDRESS**
jpmcdonaldesq@gmail.com

**7A. SUPREME COURT I.D. NUMBER OF ATTORNEY**
62062

**7B. DATE**
June 29, 2011

**8. To the Clerk of the Orphans' Court:**
Kindly Enter My Appearance on behalf of the Filing Party Identified Above.
SIGNATURE OF ATTORNEY (OR IF UNREPRESENTED, SIGNATURE OF FILING PARTY)

*JP McDonald*

**9.** If this filing responds to a prior filing (by another party) please insert the date and title of the prior filing, as well as the "suffix" number assigned to the prior filing. The "suffix" can be found in a column labeled "suffix" on the docket for the case. The suffix also appears on the label affixed to any filed document as the numbers after the decimal following the Orphans' Court Case Number for any case.
DATE OF PRIOR FILING:
DOCUMENT NUMBER OF PRIOR FILING, INCLUDING SUFFIX:
TITLE OF PRIOR FILING:

**10. OTHER PARTIES:** PLEASE ATTACH A SEPARATE SHEET LISTING THE NAME, ADDRESS AND TELEPHONE NUMBER FOR EACH UNREPRESENTED PARTY, AND THE NAME OF EACH REPRESENTED PARTY, TOGETHER WITH THE NAME ADDRESS AND TELEPHONE NUMBER OF THAT PARTY'S ATTORNEY OF RECORD.

**11. PLEADING OR DOCUMENT FILED** (PLEASE SELECT FROM LIST OF PLEADINGS AVAILABLE FROM THE CLERK OF THE ORPHANS' COURT OR AT http://rwoc.montcopa.org/forms) Petition with a Citation Requested

**12. PLEASE SELECT YES FOR ONE (AND ONLY ONE) OF THE FOLLOWING FIVE TYPES OF FILINGS:**

| 12A. Is a Citation requested? | 12B. Is a Rule Returnable attached requesting a return date and/or a hearing? | 12C. Is Notice required? | 12D. Consent. | 12E. |
|---|---|---|---|---|
| ☑ Yes | ☐ Yes | ☐ Yes. Copy of Notice attached to filing. Date of Notice | ☐ Yes. Consents/Joiners of all interested parties are attached. | ☐ This is a responsive pleading which requires no notice, Citation or Rule. |



scan07/13/2011

IN THE COURT OF COMMON PLEAS
MONTGOMERY COUNTY, PENNSYLVANIA
ORPHANS' COURT DIVISION

O. C. NO.

IN RE: NORMA H. SILVERBERG,
PRINCIPAL OF A POWER OF ATTORNEY

PETITION FOR AGENT'S ACCOUNT

Petitioner, Marc Silverberg, by and through his undersigned counsel, Joseph P. McDonald, Esquire, hereby petitions this Honorable Court for an Order directing Richard J. Silverberg to file an agent's account, and in support thereof, avers as follows:

Jurisdiction and Venue

1. The Orphans' Court has jurisdiction pursuant to 20 Pa. C.S. §711(22) over all matters pertaining to the exercise of powers by agents acting under powers of attorney as provided in Chapter 56.

2. Venue lies in Montgomery County pursuant to §5610 since the Principal resides in Montgomery County.

Factual Background

3. Norma H. Silverberg is 83 years old. She is unmarried and has three children, two sons Marc and Richard, and a daughter Ellen. She lives at 1250 East Greenwood Avenue, Apt. #626, Jenkintown, PA 19046.

4. Your Petitioner, Marc Silverberg is the son of Norma H. Silverberg. He resides at 11295 Mingo Drive, Hernando, MS 38632.

5. Respondent, Richard J. Silverberg is the son of Norma H. Silverberg and is the Agent



under a Power of Attorney dated approximately April 2000.  He resides at 505 Pine Street, 2nd Floor, Philadelphia PA 19106.

## Norma Silverberg's car accident

6.  On February 29, 2000 Norma H. Silverberg was involved in a car accident and she suffered very serious injuries, including brain trauma and numerous broken bones, for which she received treatment at University of Pennsylvania while in a coma or semi-conscious state, which lasted approximately two weeks, and which then required extensive therapy at Moss Rehabilitation Center and another facility for over one year.

7.  Upon information and belief, in April 2000, while Norma was recovering from her injuries, Respondent, Richard J. Silverberg prepared and had her sign a Power of Attorney in which he was nominated as Agent.

8.  Thereafter, Richard, who is an attorney, settled Norma's accident lawsuit for approximately $1,600,000.

## Richard refuses to provide asset information

9.  Following the execution of the Power of Attorney Richard has been handling all of Norma's finances for the last 11 years.

10. Marc Silverberg has requested on many occasions that his brother Richard provide copies of asset statements, but his requests have always been refused.

11. On May 3, 2011 Petitioner's counsel forwarded Richard a letter requesting financial information, which request was denied in a letter dated May 18, 2011. True and correct copies of both letters are attached hereto as Exhibit "A".

2

Scanned/13/2011

12. Recently, Richard supplied Marc with a computer print-out statement of a Vanguard Account titled "I/M Norma H. Silverberg Trust DTD 7/18/01" which represents a present market value in the account of $882,116.83.   A true and correct copy of the statement is attached hereto as Exhibit "B".

13. The balance in the account represents roughly one-half of the 1.6 Million which was received in settlement of the lawsuit in approximately 2001, not including growth which should have occurred on the fund for the last 10+ years.

14.  In Richard's May 18, 2011 letter to counsel he stated that the Vanguard account "essentially constitutes the entirety of Norma's assets." See Exhibit "A".

15.  The Vanguard account statement at Exhibit "B" shows withdrawals of $1,044.31, $1,955.69, and $3,000 in April 2011, which totals $6,000.  The first two withdrawals are labeled "periodic payment for the beneficiary" while the $3,000 withdrawal is labeled "distribution per Trustee request."

16.  Norma lives in an apartment in Jenkintown and does not now, nor has she ever, lived in an assisted living facility or nursing home.  Accordingly, the withdrawals of $6,000 in April 2011, particularly if they occur on a monthly basis, are suspicious.

17.  Norma, age 83, suffers from mental deficits, including confusion and short-term memory problems, which limit her ability to know her assets, income, receipts and disbursements.

3

### Request for Agents' Accounts

18. Pursuant to 20 Pa. C.S. §5610 "an agent shall file an account of his administration whenever directed to do so by the court and may file an account at any other time."

19. Petitioner requests this Honorable Court to order Respondent, Richard J. Silverberg to file an account from the date of the Power of Attorney, April 2000, to the present.

20. Richard has caused this petition to be filed. His refusal to provide the family with financial information and at least an informal accounting of his mother's money, coupled with a ten-year 50% diminution of principal, and recent unexplained large withdrawals from the Vanguard account, have all collectively served as reasons why Petitioner is asking for the accounting.

21. It is vitally important to the financial health of Norma Silverberg that her assets be preserved since she may require nursing home or assisted living facility care in the future.

**WHEREFORE**, for all the foregoing reasons, Petitioner requests this Honorable Court to issue an order directing the filing of an agent's account.

Respectfully submitted:

Joseph P. McDonald, Esquire
Smith, Aker, Grossman & Hollinger, LLP
60 East Penn Street, P.O. Box 150
Norristown, PA 19404
610-275-8200
Attorney for Petitioner, Marc Silverberg

4

(Page 5 of 12)

## VERIFICATION

     I, **Marc Silverberg**, verify that the statements made in the foregoing Petition are true and correct to the best of my knowledge, information and belief. I understand that false statements herein are made subject to the penalties of 18 Pa. C.S.A. Section 4904 relating to unsworn falsification to authorities.

Marc Silverberg

Dated: June 23, 2011

Scanned 07/13/2011

# EXHIBIT "A"

LAW OFFICES

# SMITH, AKER, GROSSMAN & HOLLINGER, LLP

60 EAST PENN STREET

P.O. BOX 150

## NORRISTOWN, PA 19404-0150

H. PAUL SMITH (1943-1998)
J. BROOKE AKER
RICHARD L. GROSSMAN
JAMES L. HOLLINGER
FRANCES A. THOMSON
JOSEPH P. McDONALD

AREA CODE 610
275-8200
FAX 275-7720

May 3, 2011

Richard J. Silverberg
505 Pine Street, 2nd Floor
Philadelphia, PA 19106

Re: Estate of Norma Silverberg, Principal of a Power of Attorney

Dear Mr. Silverberg:

Please be advised that I represent your brother, Marc Silverberg, in connection with this matter. It is my understanding that your mother received a substantial accident settlement 10 years ago and that you have been handling her financial affairs pursuant to a Power of Attorney which was signed soon after her accident.

Mr. Silverberg advised me that despite repeated requests for information concerning your mother's finances, you refuse to provide the requested information. Accordingly, I would ask that you provide copies of the original power of attorney document that was signed by her, past and current financial statements in your possession for any and all assets in which Norma Silverberg has an interest, regardless of the tilting of the assets, including but not limited to, bank accounts and brokerage accounts and her income tax statements for the past 10 years. Also, please advise me of any real estate or businesses in which she has an interest or had an interest in over the past ten years. I am also requesting the documentation of insurance claim settlement records from the insurance companies as to how much the settlement was and what was the amount deposited into your mother's Vanguard account upon opening it.

In the event that you refuse to comply with this reasonable request for information, then Mr. Silverberg plans to petition the Orphans' Court to compel an Agent's Account, which will require you to disclose any and all transactions which occurred during your entire tenure as Agent of the Power of Attorney, including all principal and income receipts, all disbursements for any purpose, and principal and income on hand presently.

Kindly provide the requested information within 2 weeks. Thank you for your attention to this matter.

Very truly yours,

Joseph P. McDonald

cc Marc Silverberg

RICHARD J. SILVERBERG

ATTORNEY AT LAW

505 PINE STREET

SECOND FLOOR

PHILADELPHIA, PA 19106

(267) 519-0240

RJS@RJSILVERBERG.COM

May 18, 2011

Joseph P. McDonald, Esquire
Smith, Aker, Grossman & Hollinger LLP
60 East Penn Street, Box 150
Norristown, PA 19404-0150

RE:   Norma Silverberg

Dear Mr. McDonald:

This responds to your letter of May 3, 2011. Preliminarily, this is not an estate matter, as the caption of your letter states. As you know, the power of attorney permits me to act as attorney-in-fact for Norma. It does not confer standing upon Marc or Ellen for purposes of obtaining, or petitioning to obtain, information concerning Norma's financial affairs (or anything else).

The events surrounding our father's recent death have been tragic and painful, and perhaps have contributed to my brother's actions here. However, my role as attorney-in-fact for Norma is not the same as an executor's duties and responsibilities with respect to the administration of an estate, and does not require that I make the disclosures that your letter demands. Nevertheless, without a good faith basis, you apparently are willing to file a petition in an effort to obtain something to which you are not entitled. Further, since any such petition would require me to retain counsel which would be paid for by Norma, your firm would be causing both Marc and our mother to incur needless financial expense.

As I have done in the past, I am willing to provide certain information that will confirm the status of Norma's account. In fact, I recently provided both Norma and Ellen with the April 2011 statement from Vanguard, which essentially constitutes the entirety of Norma's assets, and which has now been sent to Marc as well. I believe this satisfies Marc's concerns.

This is an extremely difficult time for our family. Based upon the inappropriate nature of your letter, it is apparent that your primary concern is not my brother's interests, and instead is extracting fees from him. Hopefully, my brother will come to see that, and knows that his family loves him, that no one is trying to harm or exclude him, and that everyone is doing the best they can.

Joseph P. McDonald, Esquire
May 18, 2011
Page 2

       Should there be any need for future communication, please do so by e-mail.

                      Very truly yours,

                      RICHARD J. SILVERBERG

cc:    Norma Silverberg (via e-mail)
       Ellen Silverberg-Brennan (via e-mail)

rhs/mcdonald 051811 re marc

Scanned 07/13/2011

Scanned 7/13/2011

# EXHIBIT "B"

(Page 11 of 12)

Portfolio Review - Basic Account

Page 1 of 2

# PORTFOLIO REVIEW

As of: 5/17/2011

Acct Name: I/M NORMA H SILVERBERG TRUST DTD 7/18/01

 Customize

## ACCOUNT SUMMARY

| Investment Segments | Cost | Market | % of Portfolio |
|---|---|---|---|
| CASH EQUIVALENTS | 16,878.57 | 16,878.57 | 1.91 |
| U.S. EQUITY | 292,137.49 | 444,288.98 | 50.37 |
| INTERNATIONAL EQUITY | 65,818.49 | 127,173.73 | 14.42 |
| TAXABLE BONDS | 280,551.55 | 293,775.55 | 33.30 |
| TOTAL ACCOUNT | 655,384.10 | 882,116.83 | 100.00 |

Summary Charts

Portfolio %

Market Value

## INVESTMENTS

| Units | Description | Unit Price | Cost | Market Value | Last Priced |
|---|---|---|---|---|---|
| | **CASH EQUIVALENTS** | | | | |
| 16,878.57 | VANGUARD PRIME MONEY MARKET FUND | 1.000 | 16,878.57 | 16,878.57 | 04/30/2011 |
| | Total CASH EQUIVALENTS | | 16,878.57 | 16,878.57 | |
| | **U.S. EQUITY** | | | | |
| 12,900.377 | VANGUARD TOTAL STOCK MARKET INDEX FUND ADM SHS | 34.440 | 292,137.49 | 444,288.98 | 04/30/2011 |
| | Total U.S. EQUITY | | 292,137.49 | 444,288.98 | |
| | **INTERNATIONAL EQUITY** | | | | |
| 4,451.303 | VANGUARD TOTAL INTERNATIONAL STOCK INDEX FND ADM | 28.570 | 65,818.49 | 127,173.73 | 04/30/2011 |
| | Total INTERNATIONAL EQUITY | | 65,818.49 | 127,173.73 | |
| | **TAXABLE BONDS** | | | | |
| 15,279.099 | VANGUARD TOTAL BOND MARKET I NDEX FD ADMIRAL SHS | 10.650 | 155,109.96 | 162,722.40 | 04/30/2011 |
| 2,774.053 | VANGUARD SHORT-TERM INVESTME NT-GRADE FD INV SHS | 10.780 | 29,655.35 | 29,904.29 | 04/30/2011 |
| 10,155.508 | VANGUARD INTERMEDIATE-TERM I NV-GRADE FD ADM SHS | 9.960 | 95,786.24 | 101,148.86 | 04/30/2011 |
| | Total TAXABLE BONDS | | 280,551.55 | 293,775.55 | |
| | TOTAL ACCOUNT INVESTMENTS | | 655,384.10 | 882,116.83 | |

## TRANSACTION ACTIVITY

| Date | Transaction Description | Cash | Investments |
|---|---|---|---|
| 04/01/2011 | Beginning Balances | 0.00 | 661,953.60 |
| 04/08/2011 | VANGUARD NATIONAL TRUST COMPANY QUARTERLY FEE | -757.83 | 0.00 |
| 04/08/2011 | VANGUARD NATIONAL TRUST COMPANY QUARTERLY FEE | -757.84 | 0.00 |
| 04/12/2011 | SILVERBERG LIVING TRUST 1203025 PERIODIC PAYMENT FOR THE BENEFICIARY | -1,044.31 | 0.00 |
| 04/12/2011 | SILVERBERG LIVING TRUST 1203025 PERIODIC PAYMENT FOR | -1,955.69 | 0.00 |

Portfolio Review - Basic Account

Page 2 of 2

| Date | | Description | Amount | Balance |
|---|---|---|---|---|
| | | THE BENEFICIARY | | |
| 04/27/2011 | | SILVERBERG LIVING TRUST | -3,000.00 | 0.00 |
| | | 1203025 | | |
| | | DISTRIBUTION PER | | |
| | | TRUSTEE REQUEST | | |
| | | VANGUARD TOTAL BOND MARKET I NDEX FD ADMIRAL SHS | | △ |
| 04/04/2011 | | DIVIDEND RECEIVED | 465.07 | 0.00 |
| | | Security Total | 465.07 | 0.00 |
| | | VANGUARD SHORT-TERM INVESTME NT-GRADE FD INV SHS | | △ |
| 04/04/2011 | | DIVIDEND RECEIVED | 72.45 | 0.00 |
| | | Security Total | 72.45 | 0.00 |
| | | VANGUARD INTERMEDIATE-TERM I NV-GRADE FD ADM SHS | | △ |
| 04/04/2011 | | DIVIDEND RECEIVED | 407.61 | 0.00 |
| | | Security Total | 407.61 | 0.00 |
| | | VANGUARD PRIME MONEY MARKET FUND | | △ |
| 04/04/2011 | | DIVIDEND RECEIVED | 1.01 | 0.00 |
| 04/11/2011 | | REDEEM | 757.84 | -757.84 |
| 04/12/2011 | | REDEEM | 1,044.31 | -1,044.31 |
| 04/27/2011 | | REDEEM | 3,000.00 | -3,000.00 |
| | | Security Total | 4,803.16 | -4,802.15 |
| | | VANGUARD PRIME MONEY MARKET FUND-INCOME | | △ |
| 04/04/2011 | | DIVIDEND RECEIVED | 0.03 | 0.00 |
| 04/05/2011 | | PURCHASE | -946.17 | 946.17 |
| 04/11/2011 | | REDEMPTION | 757.83 | -757.83 |
| 04/12/2011 | | REDEMPTION | 1,955.69 | -1,955.69 |
| | | Security Total | 1,767.38 | -1,767.35 |
| 04/30/2011 | | Ending Balances | 0.00 | 655,384.10 |

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNYSLVANIA
ORPHANS' COURT DIVISION
No. 2011-X2313

\*        \*        \*        \*        \*

NORMA H. SILVERBERG, PRINCIPAL

\*        \*        \*        \*        \*

## ORDER

AND NOW, this *14* day of July, 2011, the petition for account filed on

June 29, 2011, is hereby DISMISSED as an inappropriate pleading.

BY THE COURT:

_____ J.

Copy of the above mailed
July 14, 2011, to:

Joseph P. McDonald, Esquire

Court of Common Pleas of Montgomery County/Orphans' Court Division

# COVER SHEET

| 1A. Does this matter already have an Orphans' Court number or Register of Wills number?<br>☑ NO ☐ YES | 1B. Orphans' Court Number/Register of Wills Number<br>If Yes in box 1A, please fill in number as follows: YEARX####<br>2011-X3367 |
|---|---|

**2. NAME OF ESTATE/ENTITY (E.G.: NAME OF DECEDENT FOR DECEDENT'S ESTATE)**

Estate of Norma H. Silverberg, An Alleged Incapacitated Person

**3. TYPE OF ESTATE/ENTITY**

☐ DECEDENT'S ESTATE/TESTAMENTARY TRUST ☐ SETTLOR'S TRUST ☑ (ALLEGED) INCAPACITATED PERSON

☐ MINOR/MINOR'S ESTATE ☐ PRINCIPAL (POWER OF ATTORNEY) ☐ NON-PROFIT CORPORATION

☐ ADOPTION ☐ MISCELLANEOUS/MISCELLANEOUS SEALED

**4. NAME OF FILING PARTY (NOT ATTORNEY FOR FILING PARTY)**

Marc Silverberg

2011-X3367.1.1     FilingID:    68688
Entry of Appearance
Receipt # 2011-14-00674    Fee    $0.00
D. Bruce Hanes, Esq. - MontCo Register of Wills
9/22/2011 10:40:36 AM

**5. FILING PARTY'S RELATIONSHIP TO ESTATE/ENTITY**

Son

| **6A. NAME OF ATTORNEY FOR FILING PARTY**<br>Joseph P. McDonald, Esquire | **6B. NAME OF ATTORNEY'S FIRM AND ADDRESS OF ATTORNEY (OR ADDRESS OF FILING PARTY, IF NOT REPRESENTED)**<br>1720 Kendarbren Drive-Suite 712<br><br>Jamison, PA 18929 |
|---|---|
| **6C. PHONE NUMBER**<br>267-483-5735 | |
| **6D. FAX NUMBER**<br>267-483-5746 | **6E. E-MAIL ADDRESS**<br>jpmcdonaldesq@gmail.com |
| **7A. SUPREME COURT I.D. NUMBER OF ATTORNEY**<br>62062 | **7B. DATE**<br>September 22, 2011 |

**8. To the Clerk of the Orphans' Court:**

Kindly Enter My Appearance on behalf of the Filing Party Identified Above.

SIGNATURE OF ATTORNEY (OR IF UNREPRESENTED, SIGNATURE OF FILING PARTY)

9. If this filing responds to a prior filing (by another party) please insert the date and title of the prior filing, as well as the "suffix" number assigned to the prior filing. The "suffix" can be found in a column labeled "suffix" on the docket for the case. The suffix also appears on the label affixed to any filed document as the numbers after the decimal following the Orphans' Court Case Number for any case.

**DATE OF PRIOR FILING:**

**DOCUMENT NUMBER OF PRIOR FILING, INCLUDING SUFFIX:**

**TITLE OF PRIOR FILING:**

10. **OTHER PARTIES: PLEASE ATTACH A SEPARATE SHEET LISTING THE NAME, ADDRESS AND TELEPHONE NUMBER FOR EACH UNREPRESENTED PARTY, AND THE NAME OF EACH REPRESENTED PARTY, TOGETHER WITH THE NAME ADDRESS AND TELEPHONE NUMBER OF THAT PARTY'S ATTORNEY OF RECORD.**

11. PLEADING OR DOCUMENT FILED (PLEASE SELECT FROM LIST OF PLEADINGS AVAILABLE FROM THE CLERK OF THE ORPHANS' COURT OR AT http://rwoc.montcopa.org/forms) Petition with a Citation Requested

**12. PLEASE SELECT YES FOR ONE (AND ONLY ONE) OF THE FOLLOWING FIVE TYPES OF FILINGS:**

| 12A. Is a Citation requested?<br>☑ Yes | 12B. Is a Rule Returnable attached requesting a return date and/or a hearing?<br>☐ Yes | 12C. Is Notice required?<br>☐ Yes. Copy of Notice attached to filing. Date of Notice | 12D. Consent.<br>☐ Yes. Consents/Joinders of all interested parties are attached. | 12E.<br>☐ This is a responsive pleading which requires no notice, Citation or Rule. |
|---|---|---|---|---|

## COURT OF COMMON PLEAS
## OF MONTGOMERY COUNTY,
## PENNSYLVANIA
## ORPHANS' COURT DIVISION

In Re: SILVERBERG, NORMA H, AN ALLEGED INCAPACITATED PERSON OR INCAPACITATED PERSON

O.C#: 2011-X3367

TO  SILVERBERG, NORMA H

## IMPORTANT NOTICE

## CITATION WITH NOTICE

**A petition has been filed with this Court to have you declared an Incapacitated Person. If the Court finds you to be an Incapacitated Person, your rights will be affected, including your right to manage money and property and to make decisions.**

A COPY OF THIS PETITION, WHICH HAS BEEN FILED BY MARC SILVERBERG IS ATTACHED.

You are hereby ordered to appear at the hearing to be held in courtroom No.14, ONE MONTGOMERY PLAZA, 4th FLOOR, NORRISTOWN, Pennsylvania, on 10/21/2011, at 10:00 AM to tell the Court why it should not find you to be an Incapacitated Person and appoint a Guardian to act on your behalf.

To be an Incapacitated Person means that you are not able to receive and effectively evaluate information and communicate decisions and that you are unable to manage your money and/or other property, or to make necessary decisions about where you will live, what medical care you will get, or how your money will be spent.

At the hearing, you have the right to appear, to be represented by an attorney, and to request a jury trial. If you do not have an attorney, you have the right to request the Court to appoint an attorney to represent you and to have the attorney's fees paid for you if you cannot afford to pay them yourself. You also have the right to request that the Court order that an independent evaluation be conducted as to your alleged incapacity.

If the Court decides that you are an Incapacitated Person, the Court may appoint a Guardian for you, based on the nature of any condition or disability and your capacity to make and communicate decisions. The Guardian will be of your person and/or our money and other property and will have either limited or full powers to act for you.

If the Court finds you are totally incapacitated, your legal rights will be affected and you will not be able to make a contract or gift of your money or other property. IOf the Court finds that you are partially incapacitated, your legal rights will also be limited as directed by the Court.

If you do not appear at the hearing (either in person or by an attorney representing you) the Court will still hold the hearing in your absence and may appoint the Guardian requested.

By: _Teresa M. Devin_
Clerk, Orphans' Court

(SEAL)

IN THE COURT OF COMMON PLEAS
MONTGOMERY COUNTY, PENNSYLVANIA
ORPHANS' COURT DIVISION

O. C. NO.

ESTATE OF NORMA H. SILVERBERG,
AN ALLEGED INCAPACITATED PERSON

## PRELIMINARY DECREE

**AND NOW,** this            day of                        , 2011, upon consideration of the
annexed Petition for Adjudication of Incapacity and the Appointment of Guardians of the
PERSON and ESTATE, it is hereby ORDERED and DECREED that:

1. This Court directs the issuance of an appropriate citation with Rule to show
cause why Norma H. Silverberg, an alleged incapacitated person, should not be adjudged
an Incapacitated Person and why the Court should not appoint appropriate guardians.

2. The Court hearing on the annexed Petition is scheduled for the
day of            , 2011, at            o'clock     .M. (Prevailing Time).  The hearing will
be held before Judge            in Courtroom        , 4th Floor, One Montgomery Plaza,
Norristown, PA.

3. Petitioner shall cause to be served (by personal service) the Citation and
Petition with attached Important Notice upon the alleged incapacitated person at least
twenty (20) days prior to the Court hearing.  The contents and terms of the Petition and
the Important Notice shall be explained to the maximum extent possible in language and
terms the alleged incapacitated person is most likely to understand.  An affidavit of
service shall be filed before the hearing or offered as an exhibit at the beginning of the
Court hearing.

4. At least twenty (20) days notice of the Petition and hearing shall be given by
certified, Returned Receipt Requested mail to all persons who are and would be entitled

to share in the estate of the alleged incapacitated person's estate if she died intestate, namely:

> Richard J.Silverberg
> 505 Pine Street, 2nd Floor
> Philadelphia, PA 19106
> (son of the alleged incapacitated person)
>
> Ellen Silverberg
> Plaza Apartment House
> 1250 Greenwood Avenue
> Apt. 626
> Jenkintown, PA 19046

5.  Petitioner shall notify the Court, in writing, at least seven (7) days prior to the Court hearing if counsel has NOT been retained by or on behalf of the alleged incapacitated person. This notice shall also contain all pertinent information which indicates whether or not counsel should be appointed to represent the alleged incapacitated person.

6.  The alleged incapacitated person shall be present at the Court hearing unless it is established that her physical or mental condition would be harmed by her presence, or it is impossible for her to be present because of her absence from the Commonwealth.

BY THE COURT:

_____
                               J.

# IN THE COURT OF COMMON PLEAS
## MONTGOMERY COUNTY, PENNSYLVANIA
### ORPHANS' COURT DIVISION

## O. C. NO.

## ESTATE OF NORMA H. SILVERBERG,
## AN ALLEGED INCAPACITATED PERSON

### FINAL DECREE

**AND NOW**, this      day of                    , 2011, based upon the evidence received and the record, this Court finds, by clear and convincing evidence that Norma H. Silverberg is adjudged a totally incapacitated person.

The Court finds that Norma H. Silverberg suffers from dementia, a condition or disability which totally impairs her capacity to receive and evaluate information effectively and to make and communicate decisions concerning management of her financial affairs or to meet essential requirements for her physical health and safety.

Marc Silverberg, son of the alleged incapacitated person, is hereby appointed Plenary Permanent Guardian of the PERSON of Norma H. Silverberg. This Guardian of the PERSON shall file a Report on the social, medical and other relevant conditions as required by 20 Pa. C.S.A.§5521(c)(ii) within the first twelve months of his appointment and annually thereafter.

Marc Silverberg is also hereby appointed Plenary Permanent guardian of the ESTATE. Bond is waived. The Guardian of the ESTATE shall file an inventory within three months of this decree of the incapacitated person's real and personal property, pursuant to 20 Pa. C.S.A. §5521(b). In addition, the Guardian of the ESTATE shall file a report within the first twelve months of his appointment and at least annually thereafter, containing the information required in 20 Pa. C.S.A. §5521(c)(1)(i).

Neither the Guardian of the PERSON nor the Guardian of the ESTATE shall have authority to enter a safety deposit box in the name of Norma H. Silverberg (individually or jointly) without written Court authorization.

The Guardian of the PERSON shall have authority and responsibility to decide where Norma H. Silverberg shall live and how meals, personal care, transportation and recreation will be provided. The Guardian of the PERSON shall also have the authority to authorize and consent to medical treatment and surgical procedures necessary for the well-being of Norma H. Silverberg. The Guardian of the PERSON and the Guardian of the ESTATE shall cooperate to prepare a budget to cover the cost of providing the aforementioned services to the person of Norma H. Silverberg.

The Guardian of the ESTATE shall have the authority and responsibility to manage and use the incapacitated person's property primarily for her benefit and secondarily for the benefit of her legal dependents in accordance with 20 Pa. C.S.A. §5536(a). The Guardian of the ESTATE is permitted to spend INCOME for the incapacitated person and her legal dependents without the Court's written approval.

The aforementioned judicial determinations have taken into consideration the matters required by 20 Pa. C.S.A. 5512.1. The Court's findings of fact and conclusions of law have been placed on the record at the evidentiary hearing.

BY THE COURT:

_____
                                              J.

IN THE COURT OF COMMON PLEAS
MONTGOMERY COUNTY, PENNSYLVANIA
ORPHANS' COURT DIVISION

O. C. NO. 2011-X 3367

ESTATE OF NORMA H. SILVERBERG,
AN ALLEGED INCAPACITATED PERSON

**PETITION UNDER §§5511 OF THE PROBATE, ESTATES AND
FIDUCIARIES CODE TO ADJUDGE NORMA H. SILVERBERG TO
BE TOTALLY INCAPACITATED AND APPOINT PLENARY
PERMANENT GUARDIANS OF HER ESTATE AND HER PERSON**

**TO THE HONORABLE JUDGES OF SAID COURT:**

The Petitioner, Marc Silverberg, respectfully represents that:

### Jurisdiction and Venue

1. The Orphans' Court has jurisdiction pursuant to 20 Pa. C.S. §711(10) and (12) over all matters pertaining to incapacitated persons.

2. Venue lies in Montgomery County pursuant to §5512(a) since the alleged incapacitated person resides in Montgomery County.

### Factual Background

3. Norma H. Silverberg is 83 years old. She is unmarried and has three children, two sons, Marc and Richard, and a daughter Ellen. She lives at Plaza Apartment House, 1250 East Greenwood Avenue, Apt. #626, Jenkintown, PA 19046.

4. Your Petitioner, Marc Silverberg is the son of Norma H. Silverberg. He resides at 11295 Mingo Drive, Hernando, MS 38632, but will be moving to New Jersey in the near future.

5. Respondent, Richard J. Silverberg is the son of Norma H. Silverberg and is the Agent under a Power of Attorney dated approximately April 2000. He resides at 505 Pine Street, 2nd Floor, Philadelphia, Pennsylvania 19106.

## Norma Silverberg's car accident

6.  On February 29, 2000 Norma H. Silverberg was involved in a car accident and she suffered very serious injuries, including brain trauma and numerous broken bones, for which she received treatment at University of Pennsylvania while in a coma or semi-conscious state, which lasted approximately two weeks, and which then required extensive therapy at Moss Rehabilitation Center and another facility for over one year.

7.  Upon information and belief, in April 2000, while Norma was recovering from her injuries, Richard J. Silverberg prepared and had her sign a Power of Attorney in which he was nominated as Agent.

8.  Thereafter, Richard, who is an attorney, settled Norma's accident lawsuit for approximately $1,600,000.

## Richard refuses to provide asset information

9.  Following the execution of the Power of Attorney, Richard has been handling all of Norma's finances for the last 11 years.

10. Marc Silverberg has requested on many occasions that his brother Richard provide copies of asset statements, but his requests have always been refused.

11. On May 3, 2011 Petitioner's counsel forwarded Richard a letter requesting financial information, which request was denied in a letter dated May 18, 2011. True and correct copies of both letters are attached hereto as Exhibit "A".

12. Recently, Richard supplied Marc with a computer print-out statement of a Vanguard Account titled "I/M Norma H. Silverberg Trust DTD 7/18/01" which represents a present market value in the account of $882,116.83.   A true and correct copy of the statement is attached hereto as Exhibit "B".

2

13. The balance in the account represents roughly one-half of the 1.6 Million which was received in settlement of the lawsuit in approximately 2001, not including growth which should have occurred on the fund for the last 10+ years.

14. In Richard's May 18, 2011 letter to counsel he stated that the Vanguard account "essentially constitutes the entirety of Norma's assets." See Exhibit "A".

15. The Vanguard account statement at Exhibit "B" shows withdrawals of $1,044.31, $1,955.69, and $3,000 in April 2011, which totals $6,000. The first two withdrawals are labeled "periodic payment for the beneficiary" while the $3,000 withdrawal is labeled "distribution per Trustee request."

16. Norma lives in an apartment in Jenkintown and does not now live, nor has she ever lived, in an assisted living facility or nursing home. Accordingly, the withdrawals of $6,000 in April 2011, particularly if they occur on a monthly basis, are suspicious.

17. Norma, age 83, suffers from mental deficits consistent with dementia, including confusion and short-term memory problems, which limit her ability to know her assets, income, receipts and disbursements.

18. Richard's refusal to provide the family with financial information and at least an informal accounting of his mother's money, coupled with a ten-year 50% diminution of principal, and recent unexplained large withdrawals from the Vanguard account, have all collectively served as reasons why Petitioner is asking for guardianship relief.

19. It is vitally important to the financial health of Norma H. Silverberg that her assets be preserved since she may require nursing home or assisted living facility care in the future.

3

### Request for Guardianship

20.  Because of the mental conditions set forth above, Norma H. Silverberg, the alleged incapacitated person, is totally unable to manage or even appreciate the significance of her financial affairs, property and business and to make and communicate any decisions relating thereto, including the ability to communicate her need for assistance in these areas.

21. Because of the mental condition as set forth above, the alleged incapacitated person lacks the capacity to make or communicate any responsible decisions concerning her person and is unable to keep herself properly nourished and hydrated or communicate to others her need for assistance in these areas.

22. Because of the severity of her mental conditions as set forth above, the assistance of other persons or services would not enable the alleged incapacitated to participate in the making of any decisions concerning her estate or person.

23. The severity of her medical condition requires that a plenary guardian be appointed to manage the estate of Norma H. Silverberg, an alleged incapacitated person.  Said guardian should be appointed to manage and handle all aspects of her estate, specifically including, but not limited to: all issues relating to her cash, checks in any bank or savings account held in her name, her money market accounts, her stocks and bonds, her personal property, her real estate, her life and other insurance of which she is a beneficiary, her entitlement to any government or non-government benefit plans, federal, state, local taxes, trust accounts of which she is the beneficiary, claims made or to be made on her behalf or against her, the execution of documents, the entry into contracts affecting her and the payment of reasonable compensation or costs to provide services for her.

4

24. The severity of the alleged incapacitated person's mental condition mandates that a plenary guardian of her person be appointed to handle all issues relating to the person of Norma H. Silverberg, an alleged incapacitated person, specifically including but not limited to: her living arrangements, her medical and psychiatric care, the administration of medication to her and the employment and discharge of physicians, psychiatrists, dentists, nurses, therapists, and other professionals for her physical and mental treatment and care.

25. The proposed plenary permanent guardian of the person and estate of Norma H. Silverberg is Petitioner, Marc Silverberg, son of the alleged incapacitated person, who does not have any adverse interest to the alleged incapacitated person and his acceptance to serve as guardian of the person and estate will be filed with the Court.

26. No other Court has ever assumed jurisdiction in any proceeding to determine the capacity of the alleged incapacitated person nor has a guardian already been appointed for Norma H. Silverberg, the alleged incapacitated person.

**WHEREFORE**, your Petitioner prays that a Citation be issued directed to Norma H. Silverberg, the alleged incapacitated person, to show cause why she should not be judged a totally incapacitated person and Marc Silverberg be appointed plenary permanent guardian of her person and estate, with notice by personal service to the alleged incapacitated person.

Respectfully submitted:

Joseph P. McDonald, Esquire #62062
1720 Kendarbren Drive
Suite 712
Jamison, PA 18929
267-483-5735
Attorney for Petitioner, Marc Silverberg

5

# VERIFICATION

I, **Joseph P. McDonald, Esquire**, verify that I reviewed the statements made in the foregoing Petition with Petitioner Marc Silverberg and they are true and correct to the best of his knowledge, information and belief. I understand that false statements herein are made subject to the penalties of 18 Pa. C.S.A. Section 4904 relating to un-sworn falsification to authorities.

Joseph P. McDonald

# EXHIBIT "A"

LAW OFFICES

# SMITH, AKER, GROSSMAN & HOLLINGER, LLP

60 EAST PENN STREET
P.O. BOX 150
NORRISTOWN, PA 19404-0150

M. PAUL SMITH (1943-1998)
J. BROOKE AKER
RICHARD L. GROSSMAN
JAMES L. HOLLINGER
FRANCES A. THOMSON
JOSEPH P. McDONALD

AREA CODE 610
275-8200
FAX 275-7720

May 3, 2011

Richard J. Silverberg
505 Pine Street, 2nd Floor
Philadelphia, PA 19106

Re: **Estate of Norma Silverberg, Principal of a Power of Attorney**

Dear Mr. Silverberg:

Please be advised that I represent your brother, Marc Silverberg, in connection with this matter. It is my understanding that your mother received a substantial accident settlement 10 years ago and that you have been handling her financial affairs pursuant to a Power of Attorney which was signed soon after her accident.

Mr. Silverberg advised me that despite repeated requests for information concerning your mother's finances, you refuse to provide the requested information. Accordingly, I would ask that you provide copies of the original power of attorney document that was signed by her, past and current financial statements in your possession for any and all assets in which Norma Silverberg has an interest, regardless of the tilting of the assets, including but not limited to, bank accounts and brokerage accounts and her income tax statements for the past 10 years. Also, please advise me of any real estate or businesses in which she has an interest or had an interest in over the past ten years. I am also requesting the documentation of insurance claim settlement records from the insurance companies as to how much the settlement was and what was the amount deposited into your mother's Vanguard account upon opening it.

In the event that you refuse to comply with this reasonable request for information, then Mr. Silverberg plans to petition the Orphans' Court to compel an Agent's Account, which will require you to disclose any and all transactions which occurred during your entire tenure as Agent of the Power of Attorney, including all principal and income receipts, all disbursements for any purpose, and principal and income on hand presently.

Kindly provide the requested information within 2 weeks. Thank you for your attention to this matter.

Very truly yours,

Joseph P. McDonald

cc Marc Silverberg

ATTORNEY AT LAW
505 PINE STREET
SECOND FLOOR
PHILADELPHIA, PA 19106

——————

(267) 519-0240
RJS@RJSILVERBERG.COM

May 18, 2011

Joseph P. McDonald, Esquire
Smith, Aker, Grossman & Hollinger LLP
60 East Penn Street, Box 150
Norristown, PA 19404-0150

RE:   Norma Silverberg

Dear Mr. McDonald:

This responds to your letter of May 3, 2011. Preliminarily, this is not an estate matter, as the caption of your letter states. As you know, the power of attorney permits me to act as attorney-in-fact for Norma. It does not confer standing upon Marc or Ellen for purposes of obtaining, or petitioning to obtain, information concerning Norma's financial affairs (or anything else).

The events surrounding our father's recent death have been tragic and painful, and perhaps have contributed to my brother's actions here. However, my role as attorney-in-fact for Norma is not the same as an executor's duties and responsibilities with respect to the administration of an estate, and does not require that I make the disclosures that your letter demands. Nevertheless, without a good faith basis, you apparently are willing to file a petition in an effort to obtain something to which you are not entitled. Further, since any such petition would require me to retain counsel which would be paid for by Norma, your firm would be causing both Marc and our mother to incur needless financial expense.

As I have done in the past, I am willing to provide certain information that will confirm the status of Norma's account. In fact, I recently provided both Norma and Ellen with the April 2011 statement from Vanguard, which essentially constitutes the entirety of Norma's assets, and which has now been sent to Marc as well. I believe this satisfies Marc's concerns.

This is an extremely difficult time for our family. Based upon the inappropriate nature of your letter, it is apparent that your primary concern is not my brother's interests, and instead is extracting fees from him. Hopefully, my brother will come to see that, and knows that his family loves him, that no one is trying to harm or exclude him, and that everyone is doing the best they can.

Joseph P. McDonald, Esquire
May 18, 2011
Page 2


Should there be any need for future communication, please do so by e-mail.


Very truly yours,

RICHARD J. SILVERBERG

cc:    Norma Silverberg (via e-mail)
       Ellen Silverberg-Brennan (via e-mail)

nhs/mcdonald 051811 re marc

# EXHIBIT "B"

# PORTFOLIO REVIEW

As of: 5/17/2011

Acct Name: I/M NORMA H SILVERBERG TRUST DTD 7/18/01

🔧 Customize

## ACCOUNT SUMMARY

▲ ( ACCOUNT SUMMARY ( INVESTMENTS ( TRANSACTION ACTIVITY )

| Investment Segments | Cost | Market | % of Portfolio |
|---|---|---|---|
| CASH EQUIVALENTS | 16,878.57 | 16,878.57 | 1.91 |
| U.S. EQUITY | 292,137.49 | 444,288.98 | 50.37 |
| INTERNATIONAL EQUITY | 65,816.49 | 127,173.73 | 14.42 |
| TAXABLE BONDS | 280,551.55 | 293,775.55 | 33.30 |
| TOTAL ACCOUNT | 655,384.10 | 882,116.83 | 100.00 |

Summary Charts

🥧 Portfolio %

📊 Market Value

## INVESTMENTS

▲ ( ACCOUNT SUMMARY ( INVESTMENTS ( TRANSACTION ACTIVITY )

| Units | Description | Unit Price | Cost | Market Value | Last Priced |
|---|---|---|---|---|---|
| | **CASH EQUIVALENTS** | | | | |
| 16,878.57 | VANGUARD PRIME MONEY MARKET FUND | 1.000 | 16,878.57 | 16,878.57 | 04/30/2011 |
| | Total CASH EQUIVALENTS | | 16,878.57 | 16,878.57 | △ |
| | **U.S. EQUITY** | | | | |
| 12,900.377 | VANGUARD TOTAL STOCK MARKET INDEX FUND ADM SHS | 34.440 | 292,137.49 | 444,288.98 | 04/30/2011 |
| | Total U.S. EQUITY | | 292,137.49 | 444,288.98 | △ |
| | **INTERNATIONAL EQUITY** | | | | |
| 4,451.303 | VANGUARD TOTAL INTERNATIONAL STOCK INDEX FND ADM | 28.570 | 65,816.49 | 127,173.73 | 04/30/2011 |
| | Total INTERNATIONAL EQUITY | | 65,816.49 | 127,173.73 | △ |
| | **TAXABLE BONDS** | | | | |
| 15,279.099 | VANGUARD TOTAL BOND MARKET INDEX FD ADMIRAL SHS | 10.650 | 155,109.96 | 162,722.40 | 04/30/2011 |
| 2,774.053 | VANGUARD SHORT-TERM INVESTMENT-GRADE FD INV SHS | 10.780 | 29,655.35 | 29,904.29 | 04/30/2011 |
| 10,155.508 | VANGUARD INTERMEDIATE-TERM INV-GRADE FD ADM SHS | 9.960 | 95,786.24 | 101,148.86 | 04/30/2011 |
| | Total TAXABLE BONDS | | 280,551.55 | 293,775.55 | △ |
| | TOTAL ACCOUNT INVESTMENTS | | 655,384.10 | 882,116.83 | △ |

## TRANSACTION ACTIVITY

▲ ( ACCOUNT SUMMARY ( INVESTMENTS ( TRANSACTION ACTIVITY )

| Date | Transaction Description | Cash | Investments |
|---|---|---|---|
| 04/01/2011 | **Beginning Balances** | 0.00 | 681,953.60 |
| 04/08/2011 | VANGUARD NATIONAL TRUST COMPANY QUARTERLY FEE | -757.83 | 0.00 |
| 04/08/2011 | VANGUARD NATIONAL TRUST COMPANY QUARTERLY FEE | -757.84 | 0.00 |
| 04/12/2011 | SILVERBERG LIVING TRUST | -1,044.31 | 0.00 |
| | 1203025 PERIODIC PAYMENT FOR THE BENEFICIARY | | |
| 04/12/2011 | SILVERBERG LIVING TRUST | -1,955.69 | 0.00 |
| | 1203025 PERIODIC PAYMENT FOR | | |

|  |  |  |  |
|---|---|---|---|
| 04/27/2011 | THE BENEFICIARY SILVERBERG LIVING TRUST | -3,000.00 | 0.00 |
|  | 1203025 DISTRIBUTION PER TRUSTEE REQUEST |  |  |
|  | VANGUARD TOTAL BOND MARKET INDEX FD ADMIRAL SHS |  | △ |
| 04/04/2011 | DIVIDEND RECEIVED | 465.07 | 0.00 |
|  | Security Total | 465.07 | 0.00 |
|  | VANGUARD SHORT-TERM INVESTMENT-GRADE FD INV SHS |  | △ |
| 04/04/2011 | DIVIDEND RECEIVED | 72.45 | 0.00 |
|  | Security Total | 72.45 | 0.00 |
|  | VANGUARD INTERMEDIATE-TERM INV-GRADE FD ADM SHS |  | △ |
| 04/04/2011 | DIVIDEND RECEIVED | 407.61 | 0.00 |
|  | Security Total | 407.61 | 0.00 |
|  | VANGUARD PRIME MONEY MARKET FUND |  | △ |
| 04/04/2011 | DIVIDEND RECEIVED | 1.01 | 0.00 |
| 04/11/2011 | REDEEM | 757.84 | -757.84 |
| 04/12/2011 | REDEEM | 1,044.31 | -1,044.31 |
| 04/27/2011 | REDEEM | 3,000.00 | -3,000.00 |
|  | Security Total | 4,803.16 | -4,802.15 |
|  | VANGUARD PRIME MONEY MARKET FUND-INCOME |  | △ |
| 04/04/2011 | DIVIDEND RECEIVED | 0.03 | 0.00 |
| 04/05/2011 | PURCHASE | -946.17 | 946.17 |
| 04/11/2011 | REDEMPTION | 757.83 | -757.83 |
| 04/12/2011 | REDEMPTION | 1,955.69 | -1,955.69 |
|  | Security Total | 1,767.38 | -1,767.35 |
| 04/30/2011 | Ending Balances | 0.00 | 655,384.10 |

## IN THE COURT OF COMMON PLEAS
## MONTGOMERY COUNTY, PENNSYLVANIA
## ORPHANS' COURT DIVISION

### O. C. NO. 2011-X 3367

## ESTATE OF NORMA H. SILVERBERG,
## AN ALLEGED INCAPACITATED PERSON

### PRELIMINARY DECREE

AND NOW, this **22nd** day of September , 2011, upon consideration of the annexed Petition for Adjudication of Incapacity and the Appointment of Guardians of the PERSON and ESTATE, it is hereby ORDERED and DECREED that:

1. This Court directs the issuance of an appropriate citation with Rule to show cause why Norma H. Silverberg, an alleged incapacitated person, should not be adjudged an Incapacitated Person and why the Court should not appoint appropriate guardians.

2. The Court hearing on the annexed Petition is scheduled for the **21st** day of **October** , 2011, at **10** o'clock **A** .M. (Prevailing Time). The hearing will be held before Judge **Stanley R. Ott** in Courtroom **"14"** , 4th Floor, One Montgomery Plaza, Norristown, PA.

3. Petitioner shall cause to be served (by personal service) the <u>Citation</u> and <u>Petition</u> with attached <u>Important Notice</u> upon the alleged incapacitated person at least twenty (20) days prior to the Court hearing. The contents and terms of the Petition and the Important Notice shall be explained to the maximum extent possible in language and terms the alleged incapacitated person is most likely to understand. An affidavit of service shall be filed before the hearing or offered as an exhibit at the beginning of the Court hearing.

4. At least twenty (20) days notice of the Petition and hearing shall be given by certified, Returned Receipt Requested mail to all persons who are and would be entitled



to share in the estate of the alleged incapacitated person's estate if she died intestate, namely:

> Richard J.Silverberg
> 505 Pine Street, 2nd Floor
> Philadelphia, PA 19106
> (son of the alleged incapacitated person)
>
> Ellen Silverberg
> Plaza Apartment House
> 1250 Greenwood Avenue
> Apt. 626
> Jenkintown, PA 19046

5. Petitioner shall notify the Court, in writing, at least seven (7) days prior to the Court hearing if counsel has <u>NOT</u> been retained by or on behalf of the alleged incapacitated person.  This notice shall also contain all pertinent information which indicates whether or not counsel should be appointed to represent the alleged incapacitated person.

6. The alleged incapacitated person shall be present at the Court hearing unless it is established that her physical or mental condition would be harmed by her presence, or it is impossible for her to be present because of her absence from the Commonwealth.

BY THE COURT:

_____ J.

Copy of the above Decree
mailed 9 - 23-11 to:
Joseph P. McDonald, Esq.

**From:** "Marc Silverberg" <chefmarcs@aol.com>
**To:** esilverb@comcast.net
**Sent:** Tuesday, October 4, 2011 11:01:52 AM
**Subject:** Marc

Ellen,

If you have not already received a letter, from attorney Joe McDonald you should receive one in the mail shortly. It is a petition to the court for guardianship of Mom. The reason for this petition is that if granted Richard will still have power of attorney, however he will have to surrender her financial statements to the court for auditing.

After perusing the last statement that was sent out from Vanguard there is anywhere from $800k to a million dollars not accounted for in her financial estate since it's inception.

I had the lawyer send Richard a letter asking for full disclosure of her estate holdings and he "refused" to do it, solely based upon the fact that a power of attorney does not have to disclose any private information to anyone.

If her account was $1.3 mill. upon inception it would throw off approx. $70K per year plus her S.S. benefit of approx $14,400 per year totaling $84,000 of income per year without touching the principal. Her account has a 10 year average of 5.12%.

In closing I do not want to be the guardian of Mom, I don't think she needs one and she's doing fine as is. All I am asking for is full disclosure and transparency of her account.

Marc

# COURT OF COMMON PLEAS

## ORPHANS' COURT DIVISION

STANLEY R. OTT
ADMINISTRATIVE JUDGE
610-278-3178
610-278-3240/FAX
SOTT@MONTCOPA.ORG



LOIS EISNER MURPHY
JUDGE
610-278-3759
610-278-3162/FAX
LMURPHY2@MONTCOPA.ORG

### MONTGOMERY COUNTY
### THIRTY-EIGHTH JUDICIAL DISTRICT
### P.O. BOX 311
### NORRISTOWN, PENNSYLVANIA 19404-0311

October 18, 2011

Diane M. Zabowski, Esquire
117 West 2nd Avenue
Collegeville, PA 19426

    Re:    Norma Silverberg, an alleged incapacitated person, No. 2011-X3367

Dear Ms. Zabowski:

    I appointed you counsel today for Norma H. Silverberg, an alleged incapacitated person, and a copy of the appointment Order is enclosed. I am also enclosing the following:

    1. Copy of the petition filed September 22, 2011, with exhibits and related documents;

    2. Copy of letter received from Michael J. Engle, Esquire;

    3. Entry of appearance of Michael J. Engle, Esquire.

    I had a brief telephone conference on Monday, October 14th with Messrs. McDonald and Engle and learned that your client had been referred to Mr. Engle by her son Richard. I told Mr. Engle that I was concerned that given the allegations in the petition, he might become conflicted while attempting to serve both Richard and Ms. Silverberg. Accordingly, I suggested he should represent Mr. Silverberg and that I would appoint independent counsel.

When you have conducted your necessary due diligence, let me know and I will schedule a conference with counsel to discuss where we go from here. Meanwhile, thank you for your willingness to be of assistance to Ms. Silverberg and to the Court.

Very truly yours,

STANLEY R. OTT

SRO:src

Enclosures

cc:   Joseph P. McDonald, Esquire
      Michael J. Engle, Esquire

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA
ORPHANS' COURT DIVISION
NO. 2011-X3367

IN RE:  **ESTATE OF NORMA SILVERBERG**
**An Alleged Incapacitated Person**

**O R D E R**

**AND NOW, this** 18th day of October, 2011, the Court being advised that the

outstanding petition for adjudication of incapacity will be contested, the hearing now scheduled

for October 21, 2011, at 10 a.m., is hereby CONTINUED GENERALLY pending further Order

of the Court.

Diane M. Zabowski, Esquire, is hereby appointed counsel for Norma Silverberg, an

alleged incapacitated person.

BY THE COURT:

_____ J.

Copy of the above mailed
October 18, 2011, to:
Joseph P. McDonald, Esquire
Michael J. Engle, Esquire
Diane M. Zabowski, Esquire

By

## Main Identity

| | |
|---|---|
| **From:** | "Richard Silverberg" <rjsilverberg@catchthedream.org> |
| **To:** | <zabowskilawllc@verizon.net> |
| **Sent:** | Wednesday, November 02, 2011 10:23 AM |
| **Subject:** | Norma Silverberg |

Ms. Zabowski -

My name is Richard Silverberg. I understand that you have been appointed to represent my mother, Norma Silverberg, in the guardianship proceeding that my brother Marc has initiated against her. Apparently, there is some confusion concerning my status here. Although Michael Engle initially represented my mother, I am not represented in this matter.

Marc does not genuinely believe that my mother is incapacitated and in need of a guardian, which he has since admitted to us. Rather, this is (another) effort by him to obtain information/records concerning my mother's finances.

On May 3, 2011, I received a letter from Marc's lawyer requesting ten years of information/records concerning my mother's finances, and stating he would file a petition for an accounting in Orphan's Court if I failed to produce it. Approximately two weeks later, I responded and provided a statement confirming the status of my mother's account, which apparently he did not consider satisfactory.

On June 29, 2011, Marc filed a Petition for Agent's Account in Orphan's Court. The petition raised questions concerning my mother's finances and my conduct, claimed that prior requests for information had not been honored, and sought an Order directing me to file an accounting encompassing the past ten years. On July 14, 2011, Judge Ott denied the petition *sua sponte* as an "improper pleading."

On September 22, 2011, having failed to obtain the information he was seeking through his initial petition, Marc filed a petition for guardianship. However, as I mentioned, Marc does not truly believe that my mother is incapacitated or requires a guardian. For example, his petition claims my mother cannot care for herself (which he knows is untrue), but he never took any steps to obtain nursing or other specialized care for her, or to have her placed in an assisted-living or other care facility.

On October 4, 2011, Marc sent an e-mail to my sister Ellen stating:

> In closing I do not want to be the guardian of Mom, I don't think she needs one and she's doing fine as is. All I am asking for is full disclosure and transparency of her account.

I am forwarding a copy of the e-mail to you for your convenience. This e-mail confirms that Marc's only interest has been to obtain information/records concerning my mother's finances and/or my conduct, even if it means putting my mother through all of this in an attempt to get it.

On October 17, 2011, Marc and Ellen had a telephone conversation where Marc again confirmed to Ellen that all he was seeking was information, and that I could "end everything" (meaning the guardianship proceeding) if I simply produced the information/records that he was seeking.

As these events demonstrate, this petition has not been brought in good faith, and is now being pursued in bad faith. It should be noted that Marc's e-mail was forwarded to Joseph McDonald on October 6, 2011, yet McDonald failed to bring it to Judge Ott's attention at the October 17 conference, and is continuing to press the petition even though his client has withdrawn/reversed his position concerning incapacity and the need/desire for guardianship.

I have additional information which may be helpful to you, and would be happy to discuss this matter with you in greater detail at your convenience.

Thank you.

Richard J. Silverberg

267-519-0240

1/24/2012

**Main Identity**

| | |
|---|---|
| **From:** | "Richard Silverberg" <rjsilverberg@catchthedream.org> |
| **To:** | <zabowskilawllc@verizon.net> |
| **Cc:** | <esilverb@comcast.net>; "Chris Brennan" <ac81003@comcast.net> |
| **Sent:** | Thursday, November 17, 2011 11:04 AM |
| **Subject:** | Fw: Marc |

Ms. Zabowski -

I am forwarding to you a series of e-mails, one from Ellen to Marc, one from Joseph McDonald to Marc, and one from Marc to Ellen.

The e-mail from McDonald to Marc acknowledges that lawyers may not communicate directly with respondents following the filing of a petition. Notwithstanding that McDonald apparently had to seek advice on the matter, this undercuts McDonald's own conduct the day he appeared at my mother's with Marc and Shelley.

I continue to believe that this is a bad faith petition at multiple levels, and further, that every day the petition remains pending subsequent to Marc's e-mail reversing/withdrawing his positions concerning capacity and guardianship, McDonald is engaging in particularly egregious bad faith conduct - pressing a petition he knows to be baseless.

Thank you.

Richard Silverberg